Guiseppe SCIAROTTA, Appellee,

v.

Hon. Otis R. BOWEN, Secretary of the Department of Health and Human Services, Appellant.

No. 87–5064.

United States Court of Appeals, Third Circuit.

Argued Oct. 5, 1987.

Decided Jan. 19, 1988.

Gary E. Adams (argued), Pelletieri, Rabstein and Altman, Trenton, N.J., for appellee.

Richard K. Willard, Asst. Atty. Gen., Thomas M. Bondy (argued), Robert S. Greenspan, Appellate Staff, Civil Div., Dept. of Justice, Washington, D.C., Samuel A. Alito, U.S. Atty., Stephanie A. Ebers, Asst. U.S. Atty., Newark, N.J., for appellant.

Before BECKER, SCIRICA and ROSENN, Circuit Judges.

## OPINION OF THE COURT

BECKER, Circuit Judge.

This is an appeal by the Secretary of Health and Human Services ("Secretary") from a district court order reversing a decision by the Social Security Administration ("SSA") to reduce the amount of social security disability benefits payable to the plaintiff, Guiseppe Sciarotta. The district court, applying the literal words of the statutory provision authorizing such reductions, 42 U.S.C.A. § 424a (West 1983 & Supp.1987), held that where a state imposes a reduction on workers' compensation payments because of the receipt of federal disability benefits, the SSA may not in turn reduce the federal disability benefits because of the receipt of the state workers' compensation payments. We find this literal application inconsistent with Congress' intent to limit an injured worker's total benefits (combining state and federal payments) to 80% of pre-disability earnings. We therefore will reverse the district court's order, and permit the SSA to reduce federal benefits, if necessary to reduce total state and federal benefits to the 80% level. However, we will remand this case to the district court for a determination of whether the SSA's method of converting plaintiff's lump sum workers' compensation settlement to a stream of periodic payments, based on the assumption that the settlement represented the maximum allowable monthly payment, was rational.

1. $5,000 was deducted from the award for attorney's fees, leaving Sciarotta a net compensation

### I.

Sciarotta, a 49–year old machine operator, suffered a permanently disabling heart attack at work on July 19, 1979. As a result, the SSA awarded him social security disability benefits, pursuant to 42 U.S.C. § 423 (1982 & Supp. III 1985). Sciarotta also filed a claim for New Jersey state workers' compensation benefits, under N.J. Stat.Ann. §§ 34:15–1 to 15–127 (West 1959 & Supp.1987), which he settled for a lump sum of $40,000 on October 15, 1981.[1] This settlement, by its terms, had "the effect of a dismissal with prejudice" of his claim, and constituted a "complete and absolute surrender and release of all [his] rights arising out of this/these [workers' compensation] claim(s)." App. 55. *See* N.J.Stat. Ann. § 34:15–20 (West Supp.1987).

After being advised of this settlement, pursuant to its interpretation of 42 U.S.C. § 424a, the SSA reduced Sciarotta's disability payments so that his total benefits (combining state workers' compensation and federal social security) would not exceed 80% of his pre-disability earnings. Section 424a(a) provides, in relevant part:

> If for any month prior to the month in which an individual attains the age of 65—
>
> (1) such individual is entitled to benefits under section 423 of this title, and
>
> (2) such individual is entitled for such month to—
>
> (A) periodic benefits on account of his or her total or partial disability (whether or not permanent) under a workmen's compensation law or plan of the United States or a State,
>
> . . . .
>
> his benefits under section 423 of this title for such month ... shall be reduced (but not below zero) by the amount by which the sum of—
>
> (3) such total of benefits under section[ ] 423 ... of this title for such month, and

award of $35,000.

(4) such periodic benefits payable (and actually paid) for such month to such individual under such laws or plans, exceeds the higher of—

(5) 80 per centum of his "average current earnings", or

(6) the total of such individual's disability insurance benefits under section 423 of this title for such month ... prior to reduction under this section.

42 U.S.C.A. § 424a(a) (West 1983 & Supp. 1987). In terms relevant here, this section requires the Secretary to reduce the level of social security disability payments when the total of a recipient's workers' compensation benefits and social security disability benefits exceeds 80% of his pre-disability earnings.

This requirement, however, is modified by 42 U.S.C. § 424a(d) (1982), which provides:

The reduction of benefits required by this section shall not be made if the law or plan described in subsection (a)(2) of this section under which a periodic benefit is payable provides for the reduction thereof when anyone is entitled to benefits ... under section 423 of this title....

This modification allows the state to recoup for itself the savings created by the § 424a(a) reduction. If a state chooses to implement a reduction in state benefits because a recipient is simultaneously receiving federal disability benefits, this section allows the state's reduction to take precedence, and precludes the Secretary from implementing a second, double, offset. New Jersey has attempted to take advantage of this opportunity, at least to a limited extent. However, we agree with the district court that New Jersey law in this area is "far from straightforward." *Sciarotta v. Secy. of Health & Human Servs.*, 647 F.Supp. 132, 135 (D.N.J.1986).

In New Jersey, workers' compensation benefits are paid as a combination of two separate entitlements: a base compensation payment, and a "special adjustment benefit payment" designed to counteract the effects of inflation on the base payment. *See* N.J.Stat.Ann. § 34:15–95.4 (West Supp.1987); *Sciarotta*, 647 F.Supp. at 135; *Ries v. Harry Kane, Inc.*, 195 N.J.Super. 185, 478 A.2d 1195, 1200 (App. Div.1983). New Jersey has imposed a statutory offset, requiring the reduction of workers' compensation payments when a worker is simultaneously receiving social security disability benefits. However, it is only a partial offset, applying only to the special adjustment benefit, and not to the base payment. *See Ries*, 478 A.2d at 1202; *Sciarotta*, 647 F.Supp. at 135; N.J.Stat. Ann. § 34:15–95.5. Thus, New Jersey does not apply any offset to the base compensation payment, even when the combination of workers' compensation payments and federal disability benefits exceeds 80% of pre-disability earnings, and even when the elimination of the entire special adjustment benefit (pursuant to the statutory reduction, § 34:15–95.5) is insufficient to reduce total payments below the 80% ceiling. Thus a disabled worker in New Jersey can receive a total benefit package in excess of 80% of pre-disability earnings, unless the SSA imposes a further offset on social security benefits. The primary question on this appeal is whether the SSA can impose such a reduction.

## II.

To calculate the size of Sciarotta's total benefit package, the SSA first converted Sciarotta's lump sum settlement into a theoretical stream of periodic workers' compensation payments. *See* 42 U.S.C. § 424a(b) (1982) (authorizing the Secretary to make such a conversion).[2] Then, determining that Sciarotta's total periodic benefits, combining state and federal payments, exceeded 80% of his pre-disability earnings, the SSA imposed an offset on his federal benefits under § 424a(a), reducing his total benefits to the 80% level.

After exhausting his administrative appeals, Sciarotta filed this suit in the District Court for the District of New Jersey, under

---

**2.** The record is not entirely clear as to how the SSA performed these calculations, and, in fact, Sciarotta contends that they were performed irrationally. We discuss this further in Part III, *infra*.

42 U.S.C. § 405(g) (1982). Sciarotta claimed that the SSA was precluded by § 424a(d) from imposing an offset on disability benefits because New Jersey had imposed its own statutory offset. The district court agreed and reversed the Secretary's decision.

The district court first found that Sciarotta's lump sum settlement, when converted to a stream of periodic payments, reflected the statutory offset that would have been imposed by the New Jersey workers' compensation carrier.[3] The court then held that, once a state has imposed a statutory offset, § 424a(d) prohibits the SSA from imposing an additional offset, even when the state offset is not sufficient to reduce total benefits to the 80% level.

■ The Secretary argued, both at the administrative level and in the district court, that it was mere speculation to assume that Sciarotta's settlement reflected the imposition of the state offset, but the Secretary now concedes, for purposes of this appeal, that the New Jersey offset provision was applied to Sciarotta's state benefits. The Secretary instead presses an alternative argument on this appeal, *viz.*, that § 424a(d) precludes the SSA from imposing an offset on federal benefits only to the extent that a state has imposed a comparable offset on workers' compensation benefits; to the extent that the state offset does not reduce total benefits to 80% of pre-disability earnings, the SSA must reduce federal benefits accordingly. We find the Secretary's argument persuasive.

Sciarotta contends that the district court's holding is mandated by the words of the statute. A literal reading lends some support to this argument. The SSA "shall not" impose a reduction if the state compensation law "provides for the reduction" of state benefits "when anyone is entitled to [federal social security disability] benefits." § 424a(d). Sciarotta contends that New Jersey law "provides for the reduction" of state benefits when a

recipient is receiving federal social security disability benefits, and that therefore the SSA "shall not" impose a federal offset.

The Secretary, however, points to the legislative history of the federal offset provisions to support his interpretation and application of the statute. He observes correctly that Congress enacted § 424a because of concern about the concurrent receipt by many injured workers of both federal disability benefits and state workers' compensation benefits. *See* S.Rep. No. 404, 89th Cong., 1st Sess., *reprinted in* 1965 U.S.Code Cong. & Admin.News 1943, 2040. The Secretary argues that Congress intended to impose a ceiling on the total benefits an injured worker could receive; although the states are free to reduce their own payments to comply with that ceiling, the federal government can further reduce benefits if the state reduction is insufficient. The legislative history supports this position.

We note that the committee report's repeated references to the "80–percent limitation," and to the "maximum" payment of 80 percent, support the Secretary's view. *See id.* at 2041. Moreover, the report makes clear that "the committee believes that it is desirable as a matter of sound principle to prevent the payment of excessive combined benefits." *Id.* at 2040. *See Richardson v. Belcher,* 404 U.S. 78, 83, 92 S.Ct. 254, 258, 30 L.Ed.2d 231 (1971) (purpose of federal offset provision is to reduce excessive benefit payments by "limiting total state and federal benefits to 80% of [pre-disability earnings]"); *Kananen v. Matthews,* 555 F.2d 667, 670 (8th Cir.), *cert. denied,* 434 U.S. 939, 98 S.Ct. 429, 54 L.Ed. 2d 298 (1977).

It is apparent to us, therefore, that a literal reading of § 424a(d), without an examination of congressional intent, could lead to implausible results. In *Swain v. Schweiker,* 676 F.2d 543 (11th Cir.), *cert. denied,* 459 U.S. 991, 103 S.Ct. 349, 74 L.Ed.2d 388 (1982), the plaintiff argued

---

**3.** [T]he reality of the situation is that any settlement offer by a worker's compensation carrier would reflect any offset that would be applied if the case went to judgment. This is the ineluctable consequence of rational negotiation, and, contrary to the argument of the Secretary, is not speculative.
*Sciarotta,* 647 F.Supp. at 134.

that once a state law "provides for" a reduction of state benefits when an injured worker receives federal disability benefits, the SSA is precluded from imposing its offset on federal benefits, even in periods when the state offset provision is not operating.[4] *Id.* at 545–46. Essentially, the plaintiff's literal reading of the statute would have precluded the SSA from reducing federal benefits merely because of the "existence [of] a statute pursuant to which a reduction may be made, regardless of whether the reduction is actually made." *Id.* at 545 (citation omitted) (emphasis deleted). The court recognized that such a literal reading would lead to results inconsistent with the purposes of the statute, and therefore rejected the argument. *Id.* at 546–47.

Under Sciarotta's literal reading of the statute, a state could foreclose any reduction in federal benefits merely by imposing a nominal offset in state compensation payments. Because Sciarotta's reading of the statute is not concerned with the amount of the state-imposed offset, the mere existence of *some* state offset would be sufficient to preclude *any* federal offset. Notwithstanding its ultimate conclusion, the district court implicitly recognized that such a result could not have been intended by Congress; the court prohibited the SSA from imposing its offset because of the *"significant* reduction" imposed by New Jersey. 647 F.Supp. at 135 (emphasis added). Yet if Congress intended a literal application of the statute, it is plain that there would be no basis for limiting the prohibition to situations where the state imposes "significant" reductions.

Sciarotta makes a second argument, however, contending that his interpretation of the statute is in accord with Congress'

intent, in enacting § 424a(d), to return to the states control over the level of benefits that an injured worker should receive. Sciarotta argues that if the SSA is allowed to reduce federal benefits whenever total benefits exceed the 80% level, even when the state has made the legislative decision *not* to reduce benefits to that level, then the state will be unable to provide its injured workers with benefits that exceed 80% of pre-disability earnings.

This argument, however, is easily answered. A state is free to provide its injured workers with as much compensation as the state chooses, out of the state treasury. However, as long as the federal government contributes to those benefits, the federal government is free to determine the level of its own contribution. And the federal government has chosen to provide disability benefits only to the extent necessary to ensure that the injured worker's total benefits are equivalent to 80% of pre-disability income. *See Freeman v. Harris,* 625 F.2d 1303, 1306 (5th Cir.1980); 42 U.S.C. § 424a(a) (federal benefits "shall be reduced (but not below zero) by the amount by which the sum of [total state and federal benefits] exceeds ... 80 per centum of [pre-disability earnings]").

The district court recognized that "[i]t may seem strange that the New Jersey Legislature could increase the money received by its disabled workers at the expense of the Social Security Administration." 647 F.Supp. at 136. Yet the district court was nevertheless persuaded by its literal reading of the statute. As already explained, however, we do not find those words as helpful. Rather, we think it apparent that Congress did not contemplate the precise situation before us when it drafted the offset provisions of § 424a.[5]

---

**4.** In *Swain,* the Florida offset provision applied to workers' compensation payments once an injured worker actually began receiving social security benefits. However, it did not apply retroactively to the period when a worker was receiving state compensation payments but had not yet begun actually to receive federal benefits, even though the federal benefits would eventually be granted retroactively. Therefore, the SSA reduced the size of *its* retroactive payments for that interim period, under § 424a(a),

to reflect the fact that total benefits for that period exceeded the 80% level, and no state offset had been imposed. Plaintiff argued, however, that because a state offset program was in existence, § 424a(d) precluded *any* federal offset, even to federal benefits paid during the time when the state offset was not applied.

**5.** In *Kean v. Heckler,* 799 F.2d 895 (3d Cir.1986), we explained that when Congress did not contemplate the precise situation before the court,

It is true, as Sciarotta contends, that Congress, in enacting § 424a(d), intended to allow the states to reap the savings of these offsets for themselves, if the states chose to do so. However, it is clear that Congress did not consider the possibility that a state would attempt to reap only a partial savings, by imposing only a partial offset.[6] It is also clear that Congress, in enacting these offset provisions, intended to "limit[ ] total state and federal benefits to 80% of the employee's average earnings prior to the disability, [thus] reduc[ing] the duplication inherent in the programs and at the same time allow[ing] a supplement to workmen's compensation where the state payments were inadequate." *Richardson v. Belcher*, 404 U.S. 78, 83, 92 S.Ct. 254, 258, 30 L.Ed.2d 231 (1971). In the instant case, the state payments were not sufficiently inadequate to justify the substantial federal supplement that the district court granted. Congress clearly intended that federal payments would supplement state payments only to the extent necessary to provide an injured worker with 80% of his pre-disability earnings, but no more.

As the Eleventh Circuit explained in *Swain*, the § 424a offset provision was designed to prevent "the receipt of duplicative state and federal benefits." 676 F.2d at 547. The purpose of the § 424a(d) exception "seems only to have been the prevention of a double offset, so that federal and state plans would not both offset the benefits that were provided by each other." *Id.* We see no reason why § 424a(d) should preclude the SSA from imposing an offset once the statutory purpose is ful-

filled. Because the New Jersey legislature has chosen to offset its compensation payments by only part of the excess over the 80% level, any further offset by the SSA to eliminate the remainder of the excess cannot constitute a prohibited "double offset."

We therefore will reverse the district court's order and permit the SSA to reduce disability payments, as needed, to reduce total benefits to 80% of pre-disability earnings.

### III.

Sciarotta also contends that the calculation method used by the SSA in converting his lump sum settlement into a stream of periodic payments lacks a rational basis. He argues that a rational proration would show that his weekly workers' compensation payments were actually so low that total benefits did not exceed the 80% level, and that therefore there is no need for any reduction in federal benefits under § 424a(a).[7]

Sciarotta received $35,000 in settlement of his workers' compensation claim. *See supra*, note 1. The SSA converted this sum into a stream of theoretical periodic payments by assuming that the settlement reflected the carrier's determination that Sciarotta would have received the maximum weekly benefit allowable under New Jersey law in 1979, determined by the SSA to be $156 per week. *See* N.J.Stat.Ann. § 34:15–12(a), (b) (West Supp.1987) (explaining how to calculate maximum allowable benefit). Dividing $35,000 by $156, the SSA determined that Sciarotta's com-

the literal language of the statute may not control; rather, the court must look to the legislative history. *Id.* at 899–902. Moreover, if even the legislative history does not provide a " 'clear expression of Congress' intent, we must defer to the Secretary's construction as long as it "represents a reasonable accommodation of conflicting [statutory] policies." ' " *Id.* at 902 (quoting *Chevron U.S.A., Inc. v. Natural Resources Defense Council*, 467 U.S. 837, 845, 104 S.Ct. 2778, 2783, 81 L.Ed.2d 694 (1984) (citation omitted)).

**6.** It is possible, of course, that New Jersey imposed this partial offset for the very reason that Sciarotta contends, to enable its injured workers to receive more than 80% of pre-disability earn-

ings in benefits. However, we are called upon to interpret a federal statute, and to declare how that statute controls the decisions of a federal agency dispensing federal funds, and therefore it is Congress' intent, not the New Jersey legislature's, which controls.

**7.** He also argues that, even if the proration method used by the SSA was correct, the SSA improperly included, in calculating his total benefits, the portion of the workers' compensation payments that represent his future medical costs. *See* 20 C.F.R. § 404.408 (1987). Because we agree with the Secretary that Sciarotta has provided insufficient documentation of this claim, we reject the argument.

pensation settlement represented payments of $156 per week for 224 weeks, or 4.3 years. Combining this with his social security benefits, the SSA determined that Sciarotta's total benefits exceeded 80% of pre-disability earnings, and therefore reduced his federal benefits by approximately $231 per month, for 4.3 years.

Sciarotta, however, argues that his lump sum settlement represents "the only workers' compensation benefit he will receive for the balance of his lifetime." Appellee's Brief at 26. He therefore contends that it was irrational to prorate the award over only 4.3 years, when, in fact, it was designed to last an entire lifetime. Moreover, he points to the unreasonableness of assuming that his award represents the maximum allowable benefit, when, in fact, it represents a compromised claim in which each party (Sciarotta and the insurance carrier) reduced its demands in order to avoid the risks of trial.

Sciarotta argues that, instead, the SSA should have prorated the lump sum award over Sciarotta's remaining life expectancy, which he contends is 23.91 years from the date of the settlement. Dividing the $35,-000 award by 23.91 years, Sciarotta argues that he is actually receiving only $1,464 per year, or $28 per week in state compensation benefits (as opposed to the $156 per week computed by the SSA). He thus contends that his total benefits, including both state and federal, do not exceed 80% of his pre-disability earnings, and therefore that no federal offset should be imposed. We find Sciarotta's arguments extremely forceful.

The Secretary makes little effort to defend or explain the SSA's calculations, beyond informing us that the statute "explicitly delegates to the Secretary the authority to determine the appropriate proration," Appellant's Reply Brief at 8; see 42 U.S.C. § 424a(b), and that therefore we should defer to the SSA's determination unless it is arbitrary or capricious. Appellant's Reply Brief at 8–9; see Wheeler v. Heckler, 787 F.2d 101, 104 (3d Cir.1986) ("because Congress has delegated to the Secretary the responsibility for administering the complex [social security] programs, we must defer to her construction, as long as it is reasonable and not arbitrary and capricious") (citations omitted). The Secretary, however, does not provide any explanation at all of how he concluded that Sciarotta's settlement represented the maximum allowable payment under New Jersey law, nor does he explain why the settlement should not be prorated over a longer period than merely 4.3 years.

The record in this case is not sufficiently complete for us to declare definitively that the SSA's calculation method is irrational. Moreover, we believe that such a determination, involving factual judgments about Sciarotta's settlement and life expectancy, and involving interpretation of New Jersey law,[8] is more appropriate for the district court in the first instance.[9] We do note, however, that if Sciarotta's allegations, as set forth above, prove true, and if the Secretary provides no further explanation, we can see no rational basis for the proration method used by the SSA. We therefore will remand this case to the district court for a determination of a rational and appropriate method of proration.[10]

---

8. For example, it might be relevant to understand more about the nature of the settlement, and the factors that go into the determination of its amount. See N.J.Stat.Ann. § 34:15–20 (West Supp.1987). Moreover, it might be useful to understand more about the size and duration of workers' compensation awards. See N.J.Stat.Ann. § 34:15–12 (West Supp.1987). See also infra, note 10.

9. Because the district court found that § 424a(d) prohibits the SSA from imposing any offset once the state has imposed some offset of its own, the court did not reach the miscalculation argument in the original proceedings. See Sciarotta, 647 F.Supp. at 136.

10. In addition to the method proposed here by Sciarotta, we note two other possible methods of proration. Because the lump sum settlement constitutes a replacement for the earnings that Sciarotta has lost due to his heart attack, a proration over his expected *working* life might be reasonable. Alternatively, it might be reasonable to prorate the settlement over the period of time during which Sciarotta would actually have been entitled to receive benefits, as determined by N.J.Stat.Ann. § 34:15–12(b) (West Supp.1987) ("This compensation shall be paid for a period of 450 weeks, at which time compensation payments shall cease unless the employee shall have submitted to such physical

## IV.

The order of the district court is therefore reversed, and this case remanded to the district court for further proceedings consistent with this opinion.

or educational rehabilitation as may have been ordered by the rehabilitation commission, and can show that [the disability continues to prevent the employee from working].").  For the

reasons stated above, however, we will allow the district court, aided by the views of the parties, to address this question in the first instance.