**Bobby MERZ, Plaintiff–Appellant,**

v.

**SECRETARY OF HEALTH
AND HUMAN SERVICES,
Defendant–Appellee.**

**No. 91–3169.**

United States Court of Appeals,
Sixth Circuit.

Argued June 9, 1992.

Decided July 8, 1992.

John A. Cervay (argued and briefed), Dayton, Ohio, for Bobby Merz.

George Jackiw (argued and briefed), Dept. of Health and Human Services, Of-fice of the General Counsel, Region V, Chicago, Ill., Nicholas J. Pantel, Asst. U.S. Atty., Cincinnati, Ohio, Joseph E. Kane, Asst. U.S. Atty., Columbus, Ohio, for Secretary of Health and Human Services.

Before: MARTIN and MILBURN, Circuit Judges, and BROWN, Senior Circuit Judge.

MILBURN, Circuit Judge.

Plaintiff Bobby Merz appeals the district court's judgment affirming the final decision of the defendant, the Secretary of Health and Human Services, that plaintiff's social security disability benefits are subject to the offset provision of 42 U.S.C. § 424a(a) due to the receipt of his Ohio workers' compensation benefits. On appeal, the sole issue presented is whether the Social Security Administration may reduce Merz's benefits in order that his total combined benefits under social security disability and a state workers' compensation plan do not exceed 80 percent of Merz's predisability average current earnings assuming that the state has already made a reduction in the claimant's workers' compensation benefits due to his receipt of social security disability benefits. For the reasons that follow, we affirm.

## I.

Plaintiff Merz filed for social security disability benefits on June 25, 1980, stating that he had been disabled since January 18, 1979. At that time, he was receiving temporary total disability workers' compensation benefits from the State of Ohio in the amount of $217.66 per week. Plaintiff has been receiving social security disability benefits since his application for benefits was approved on April 27, 1983.[1]

Pursuant to 42 U.S.C. § 424a(a), in December 1985, the Social Security Administration ("SSA") reduced plaintiff's disability benefits to $552.50 for November 1985 and $573.90 for December 1985 in view of

---

1. Both plaintiff's state workers' compensation payments and social security disability payments have fluctuated from 1983 to the present for various reasons unrelated to the issue in this case. Consequently, the amounts of benefits received by Merz are discussed only where they relate to the issue before this court.

plaintiff's receiving weekly workers' compensation benefits for temporary total disability in the amount of $217.66. 42 U.S.C. § 424a(a) provides that where the sum of a claimant's (plaintiff's) state workers' compensation monthly benefits and his federal disability monthly benefits exceeds 80 percent of his average current earnings before he became disabled ("average current earnings"), the SSA shall reduce its disability payments in order that the claimant is receiving no more than 80 percent of his average current earnings.[2]

On June 1, 1986, plaintiff was awarded permanent total disability benefits under Ohio workers' compensation law at the rate of $160.67 per week. The SSA continued to adjust plaintiff's disability benefits so that when they were combined with his workers' compensation payments, the sum did not exceed 80 percent of his average current earnings before he became disabled.

Upon learning that the SSA intended to reduce plaintiff's social security disability benefits based on his workers' compensation benefits in the amount of $160.67 per week, plaintiff requested reconsideration arguing that his social security disability benefits were improperly reduced under 42 U.S.C. § 424a(d). Section 424a(d) provides that no deduction in social security disability benefits shall be made where a state workers' compensation plan provides for a deduction in workers' compensation benefits due to social security disability benefits. Plaintiff argued that the reduction of his state workers' compensation benefits from $217.66 per week to $160.67 per week was made because of the receipt of social security disability benefits, and, therefore, the SSA was prohibited from reducing his disability benefits. However, upon reconsideration at plaintiff's request, the SSA concluded that plaintiff's reduction in state workers' compensation benefits was based solely on his change in status under state

law from being temporarily totally disabled to his being permanently totally disabled. Plaintiff appealed and on December 27, 1988, the administrative law judge ("ALJ") affirmed the decision of the SSA on the same ground. Thereafter, the Appeals Council denied plaintiff's request for review.

Plaintiff timely sought judicial review in the district court which assigned the matter to a magistrate judge for review. In a report and recommendation dated August 22, 1990, the magistrate judge recommended that the decision of the ALJ be affirmed, but on another ground, which will be discussed below. In an order dated January 9, 1991, the district court adopted the magistrate judge's report and recommendation and entered judgment for defendant on the same date. This timely appeal followed.

## II.

### A.

In interpreting the meaning of a statute which is silent or ambiguous with respect to a specific issue, the agency charged with interpreting that statute is accorded deference. *Michigan United Conservation Clubs v. Lujan*, 949 F.2d 202, 206 (6th Cir.1991); *Whiteside v. Secretary of Health and Human Services*, 834 F.2d 1289, 1292 (6th Cir.1987). The agency's construction of the statute should be followed "unless there are compelling indications that it is wrong." *Whiteside*, 834 F.2d at 1292 (citation omitted). However, this court must reject the agency's interpretation if it is inconsistent with statutory mandate or congressional policy. *Lujan*, 949 F.2d at 206; *Whiteside*, 834 F.2d at 1292. "The question for this court, therefore, is not whose interpretation of the statute that we prefer, but whether the Secretary's interpretation is reasonable, consistent, and persuasive." [3] *Id.* *Lujan*,

---

**2.** 42 U.S.C. § 424a(a) provides three methods with which to calculate a claimant's predisability earnings. The method which produces the highest income level for the claimant is that method used to determine the claimant's average current earnings. The correct amount of

plaintiff's average current earnings is not disputed in this case.

**3.** If the SSA's regulations provided a clear answer to the merits of this case, then the standard of review would be whether the Secretary's

949 F.2d at 206 (citing *Whiteside*, 834 F.2d at 1292).

### B.

■ As previously stated, 42 U.S.C. § 424a(a) provides that where the sum of a claimant's state workers' compensation benefits and his social security disability benefits exceeds 80 percent of the claimant's average current earnings (before he became disabled), the claimant's social security disability benefits shall be reduced in order that the sum of his state and federal payments does not exceed 80 percent of such average current earnings.[4] However, there is an exception provided to this general rule of reduction or "offset" as it is referred to by the SSA. *See, e.g.*, POMS DI 52001.239G.2. 42 U.S.C. § 424a(d) states:

> (d) **Exception.** The reduction of benefits required by this section shall not be made if the law or plan described in subsection (a)(2) under which a periodic benefit is payable provides for the reduction thereof when anyone is entitled to benefits under this subchapter on the basis of the wages and self-employment income of an individual entitled to benefits under section 423 of this title and such law or plans so provided on February 18, 1981.

According to the rigid, literal interpretation of section 424a(d), where a state has made a reduction on or before February 18, 1981, in its workers' compensation benefits on the basis of social security disability benefits, no matter how nominal, then the SSA is precluded from thereafter reducing a claimant's social security disability benefits. A state's reduction in its own benefits on the basis of social security disability benefits is commonly referred to as a "reverse offset." *See, e.g.*, POMS DI 52001.-239D.

Plaintiff argues that the reduction of his state workers' compensation benefits from the weekly rate of $217.66 to $160.67 per week was based solely on his receipt of social security disability benefits, thereby constituting a reverse offset. Therefore, plaintiff argues that the SSA is prohibited by section 424a(d) from reducing his Social Security disability benefits in order to ensure that his combined federal and state benefits do not exceed 80 percent of his average current earnings.

On the other hand, the SSA urges us to adopt the Third Circuit's holding in *Sciarotta v. Bowen*, 837 F.2d 135 (3d Cir.1988). *Sciarotta* held that the SSA shall reduce its social security disability payment pursuant to section 424a(a) in order to ensure that a claimant's combined state and federal benefits do not exceed 80 percent of the

---

interpretation of the statute as exemplified in the regulation is arbitrary and capricious. *Whiteside*, 834 F.2d at 1289. However, in this case, the regulations simply mirror the statute and provide no insight into its ultimate interpretation. *See* 20 C.F.R. § 404.408.

**4.** 42 U.S.C. § 424a(a) provides in relevant part:
   (a) **Conditions for reductions; computation**
   If for any month prior to the month in which an individual attains the age of 65—
   (1) such individual is entitled to benefits under section 423 of this title, and
   (2) such individual is entitled for such month to—
   (A) periodic benefits on account of his or her total or partial disability (whether or not permanent) under a workmen's compensation law or plan of the United States or a State, or
   (B) periodic benefits on account of his or her total or partial disability (whether or not permanent) under any other law or plan of the United States, a State, a political subdivi-

sion (as that term is used in section 418(b)(2) of this title), or an instrumentality of two or more States (as that term is used in section 418(g) of this title), other than (i) benefits payable under Title 38, (ii) benefits payable under a program of assistance which is based on need,

. . . . .

the total of his benefits under section 423 of this title for such month and of any other benefits under section 402 of this title for such month based on his wages and self-employment income shall be reduced (but not below zero) by the amount by which the sum of—
   (3) such total of benefits under sections 423 and 402 of this title for such month, and
   (4) such periodic benefits payable (and actually paid) for such month to such individual under such laws or plans,
exceeds the higher of—
   (5) 80 per centum of his "average current earnings". . . .

claimant's average current earnings, even though the state has already made a reduction in its benefits on the basis of social security disability benefits. In this case, the magistrate judge relied on *Sciarotta* in reaching his decision in favor of the SSA, and the district court accepted the magistrate judge's report and recommendation.

In *Sciarotta,* the Third Circuit reversed a district court's decision based on a literal interpretation of section 424a(d). The district court had held that the plaintiff's social security disability benefits could not be reduced where the State of New Jersey had already reduced the plaintiff's workers' compensation benefits, even though the sum of the plaintiff's federal and state benefits exceeded 80 percent of his average current earnings. Upon review, the Third Circuit rejected this literal interpretation of section 424a(d), and in so doing, the court relied on Congress' intent in enacting section 424a(a). The court determined that reliance on Congressional intent in lieu of a literal interpretation of the statute was appropriate where Congress did not contemplate the precise situation with which the court was confronted when Congress drafted section 424a. *Id.* at 139. The Third Circuit stated that

> [i]t is ... clear that Congress, in enacting these offset provisions, intended to limit total state and federal benefits to 80% of the employee's average earnings prior to the disability, thus reducing the duplication inherent in the programs and at the same time allowing a supplement to workmen's compensation where the state payments were inadequate.

*Id.* at 140 (citations omitted). The court further stated that

> Congress clearly intended that federal payments would supplement state payments only to the extent necessary to provide an injured worker with 80% of his pre-disability earnings, but no more.

*Id.* The court acknowledged that Congress, in enacting the exception provision of section 424a(d), intended to allow the states to have the first opportunity to reduce the amount of benefits they paid resulting in a savings to the states if the states chose to do so. *Id.* Nevertheless, the court asserted that "it is clear that Congress did not consider the possibility that a state would attempt to reap only a partial savings, by imposing only a partial offset." *Id.*

While not faced with precisely the same situation, at least one other circuit has given the same general interpretation to the exception provision of section 424a(d). In *Swain v. Schweiker,* 676 F.2d 543, 547 (11th Cir.), *cert. denied,* 459 U.S. 991, 103 S.Ct. 349, 74 L.Ed.2d 388 (1982), the Eleventh Circuit reversed a district court's decision which held that where Florida law simply provided for a reduction in Florida workers' compensation benefits based on social security disability benefits, the SSA was prohibited from reducing a claimant's social security disability benefits pursuant to section 424a(d), even if Florida had not actually reduced the claimant's workers' compensation benefits. The district court had relied on the literal interpretation of section 424a(d) noting that it excepts a claimant's social security disability benefit from reduction where state law "provides for" a reduction of workers' compensation benefits because of social security disability benefits. The Eleventh Circuit rejected this literal interpretation of section 424a on the basis that the statute "must be considered as a whole, and the exception to the offset provision must be read in light of the purpose of the [Social Security] Act." *Id.* at 546. The court further stated that

> it is clear from the legislative history that the purpose of [section 424a] is to prevent the payment of excessive combined benefits. Such payment was thought to cause two evils: first, it reduced a workers' incentive to return to the workplace and hence impeded rehabilitative efforts; and second, it created fears that the duplication of benefits would lead to an erosion of state workers' compensation programs.

*Id.* at 546–47 (citations omitted).

Plaintiff attacks the Third Circuit's holding in *Sciarotta* by noting that the court failed to discuss the last portion of section 424a(d) which makes the exception provi-

sion applicable to state workers' compensation plans providing for reverse offsets where "such [state worker's compensation] law or plan so provided on February 18, 1981." Plaintiff argues that because the Third Circuit failed to address this phrase which was added to section 424a(d) in the 1981 amendments to section 424a, it failed to properly interpret the meaning of the statute. Plaintiff argues that this phrase, which was the only substantive change to section 424a(d), indicates that Congress "implicitly" approved all state workers' compensation laws or plans which provided for a reverse offset, no matter how nominal, as of February 18, 1981. In other words, plaintiff contends that because Congress limited the exception provision to states that already had a reverse offset provision in place on February 18, 1981, it implicitly approved a prohibition on reductions of social security disability benefits, even where the sum of the federal and state benefits exceeded 80 percent of the claimant's average current earnings. Plaintiff cites no authority other than the language of the statute itself in support of his argument.

As the Third Circuit in *Sciarotta* determined, the legislative history of the statute indicates that Congress did not anticipate the situation described above when it drafted the statute. An examination of the legislative history of section 424a, which was introduced into the Social Security Act in 1965, reveals that Congress was concerned that double payments of benefits under state and federal plans be avoided so as not to discourage claimants from attempting rehabilitation and returning to work. *Richardson v. Belcher*, 404 U.S. 78, 82–83, 92 S.Ct. 254, 258, 30 L.Ed.2d 231 (1971). Moreover, Congress indicated that 80 percent of a claimant's average current earnings was the appropriate amount to act as an incentive for claimants to return to work. *Id.*

In addition, there is a better explanation available than the one offered by plaintiff to explain why Congress amended section 424a(d) in 1981. According to one treatise, when the exception provision was enacted in 1965, few states took the opportunity to enjoy savings in their compensation plans by enacting their own reductions in workers' compensation benefits based on payments of social security disability benefits. Arthur Larsen, 4 *The Law of Workmen's Compensation* § 97.35(a)(1990). This reluctance to take advantage of what were, in effect, greater federal subsidies of state workers' compensation plans was based on an "almost irrational fear of federalization that has permeated the compensation community for many years." *Id.* By 1975, only three states had introduced reverse offset provisions. However, shortly thereafter, thirteen additional states introduced reverse offset provisions into their workers' compensation plans. By 1981, one-third of the states had shifted part of their workers' compensation burdens to the federal Social Security system, and, in response, Congress enacted the 1981 amendments to the Social Security Act which closed the door to states able to enjoy savings in their workers' compensation plans. *Id.*

This interpretation is supported by the legislative history of the 1981 amendments to the Social Security Act which were part of the massive Omnibus Budget Reconciliation Act of 1981. In its report on the 1981 amendments, the Senate Budget Committee expressed concern in reducing federal spending in order to effectively combat high inflation and unemployment. S.Rep. No. 97–139, 97th Cong., 1st Sess. 3–4 (1981), *reprinted in* 1981 U.S.C.C.A.N. 396–398. Thus, the 1981 amendment to section 424a(d) does not indicate, as plaintiff argues, that Congress intended no reductions whatsoever in social security disability benefits where a state had its own reverse offset provision in effect on February 18, 1981. The amendment simply indicates that after February 18, 1981, Congress provided, in a cost saving measure, that all states which did not then have in effect a reverse offset provision were forever foreclosed from taking advantage of federal monies provided pursuant to section 424a(d).

Finally, plaintiff further argues that the SSA should not offset its disability benefits

on the basis of Ohio workers' compensation benefits because the SSA does not offset its disability benefits on the basis of benefits received from Ohio's Disabled Workers Relief Fund ("DWRF") provided for under Ohio Rev.Code § 4123.412 (Anderson 1991). To receive DWRF benefits, a claimant must be permanently and totally disabled and receiving workers' compensation benefits. *Id.* Where the sum of the claimant's state workers' compensation benefits and social security disability benefits is less than a certain statutory minimum amount, then the claimant receives supplemental payments from DWRF in order to raise the claimant's benefits level to the statutory minimum amount. *Id.* This minimum amount is based on a 1977 figure of $342 per month which has been adjusted annually based on the United States Department of Labor's national consumer price index. Ohio Rev.Code § 4123.62(B) (Anderson 1991).

While plaintiff has at no time been entitled to DWRF benefits,[5] he argues that an anomalous result occurs where the SSA must reduce its disability benefits on the basis of Ohio workers' compensation benefits but not on the basis of DWRF benefits. At oral argument, the SSA conceded that it does not and *cannot* reduce a claimant's disability benefits on the basis of DWRF benefits even if the combined benefits exceed 80 percent of the claimant's average current earnings, because DWRF benefits are benefits based on need. Under 42 U.S.C. § 424a(a)(1)(B)(ii), social security disability payments may not be reduced on the basis of a claimant's receipt of "benefits payable under a program of assistance which is based on need." *See also* POMS DI 5200.239D (SSA's internal regulation providing that disability benefits cannot be offset on the basis of DWRF benefits). Accordingly, SSA's practice of offsetting on the basis of workers' compensation benefits but not on the basis of DWRF benefits follows the statutory scheme and does not cause an anomalous result.

To summarize, we hold that the SSA's interpretation of section 424a(d) is reasonable. Therefore, we affirm the judgment of the district court and adopt the well-reasoned decision of the Third Circuit in *Sciarotta v. Bowen* which holds that the SSA may reduce a claimant's social security disability benefits pursuant to section 424a(a) to the extent that his combined federal and state benefits exceed 80 percent of his predisability average current earnings, regardless of whether the state has reduced its workers' compensation benefits payable to claimant on the basis of social security disability benefits. Consequently, it is unnecessary for us to examine Ohio law to determine whether plaintiff's state workers' compensation payments were reduced from $217.66 to $160.67 per week as a result of plaintiff's receipt of social security disability benefits or as a result of his change in status from being temporarily totally disabled to being permanently totally disabled.

### III.

For the reasons stated, the district court's judgment in favor of defendant is AFFIRMED.

---

**5.** Ohio's statutory minimum amount in 1986 was $722.50 per month. Plaintiff's combined federal and state payments totaled $1,159.20 per month, well above the statutory minimum amount.