IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Cynthia Sakmary,                 :
              Petitioner        :
                                :
      v.                      :
                                :
Home Care Hospice, Inc. (Workers'      :
Compensation Appeal Board),       :     No. 127 C.D. 2025
              Respondent    :     Submitted: April 13, 2026

BEFORE:    HONORABLE MICHAEL H. WOJCIK, Judge
                HONORABLE CHRISTINE FIZZANO CANNON, Judge
                HONORABLE STACY WALLACE, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE FIZZANO CANNON                    FILED: May 22, 2026

       Cynthia Sakmary (Claimant) petitions *pro se* for review of a December 31, 2024, order of the Workers' Compensation Appeal Board (Board). The Board dismissed Claimant's miscellaneous petition seeking to reconsider or set aside the compromise and release (C&R) agreement she signed in May 2012 because it lacked jurisdiction to consider the matter. Upon review, we affirm and deny as moot the motion to quash filed by Home Care Hospice, Inc. (Employer).

## I. Factual and Procedural Background

       The following facts are as alleged in Claimant's November 2024 workers' compensation petition, which includes her account of the relevant events and a letter by her current treating doctor, Kenneth Zahl, M.D. In June 2004, Claimant worked for Employer as a hospice nurse case manager. Certified Record

(C.R.) at 10.[1]  On June 2, 2004, while she was driving for her job, a truck hit her vehicle. *Id*. She sustained disabling spinal and brain injuries and developed mental health conditions. *Id*. In May 2005, a workers' compensation judge (WCJ) awarded benefits of $690 per week, or $2,760 per month, with 20 percent deducted for attorney's fees to her counsel, Eric S. Borjeson, Esquire (Attorney Borjeson). *Id*. Attorney Borjeson advised Claimant to also apply for Social Security disability benefits (SSD) based on her injuries. *Id*. at 10-11. She was approved in December 2007 and began receiving SSD of $191 per month in addition to her weekly workers' compensation benefits. *Id*. at 10-11.  At around the same time, Claimant settled a third-party lawsuit against the truck driver for $225,000; after subrogation and attorney's fees, she received a lump sum of $76,000. *Id*. at 11.

Claimant asserted that her former doctor prescribed high dosages of narcotic pain medication along with a stimulant to counteract the drowsiness and similar side effects from the narcotics.  C.R. at 11.  At some point, she relocated temporarily to Arizona, where she was able to obtain her narcotic pain medication but not the stimulant. *Id*. at 12.  In early 2012, Attorney Borjeson contacted her in Arizona and informed her that she could settle her workers' compensation wage loss benefits via C&R for a lump sum of $80,000,[2] with medical costs to remain open and paid by Employer. *Id*.  Attorney Borjeson assured Claimant that her SSD payments would increase to cover the loss of her workers' compensation benefits and that she could invest the $80,000 so it would last through her life expectancy. *Id*.  Claimant trusted Attorney Borjeson and agreed to the C&R. *Id*.

---

[1] Certified Record (C.R.) references are to electronic pagination.

[2] The C&R was for $100,000, with Attorney Borjeson receiving $20,000 in attorney's fees and Claimant receiving the remaining $80,000.  C.R. at 28.

2

On May 24, 2012, a WCJ conducted a C&R hearing at 10:00 a.m. in Pennsylvania; Claimant participated by cell phone, without video, at 7:00 a.m. in Arizona. C.R. at 12. Because she did not have the stimulant to counter the effects of her narcotic medication, she was drowsy, had difficulty concentrating, and did not fully understand what was happening during the hearing. *Id*. She adds that prior to the hearing, Attorney Borjeson did not send her the entire C&R agreement, only the signature page for her to have notarized and return to him with a blank date that he would complete for her at the hearing. *Id*. She continued to trust Attorney Borjeson to look out for her best interests and ensure that she would receive enough funds to sustain herself. *Id*. at 13.

The record does not include a transcript of the hearing, but does include the WCJ's May 31, 2012, decision approving the C&R, which stated that Claimant credibly testified that she understood the terms and legal significance of the agreement. C.R. at 23. An addendum to the decision and agreement states that although the C&R was for a lump sum of $80,000, because that amount was intended to last through Claimant's remaining life expectancy, calculated as roughly 36 more years, her theoretical prorated workers' compensation benefit for purposes of an SSD setoff pursuant to federal law was to be $184 per month.[3] *Id*. at 28. Attorney Borjeson assured Claimant that her SSD payments would increase to make up the

---

[3] "Congress, in enacting these offset provisions, intended to "limit [ ] total state and federal benefits to 80% of the employee's average earnings prior to the disability, [thus] reduc[ing] the duplication inherent in the programs and at the same time allow[ing] a supplement to workmen's compensation where the state payments were inadequate." *Sciarotta v. Bowen*, 837 F.2d 135, 140 (3d Cir. 1988). "Congress clearly intended that federal payments would supplement state payments only to the extent necessary to provide an injured worker with 80% of his pre-disability earnings, but no more." *Id*.

difference from the "loss" of her regular workers' compensation payments after the C&R but did not provide her with specific figures. *Id*. at 13.

After the C&R, Claimant's SSD benefits increased to about $1,500 per month but were still lower than her prior workers' compensation benefits of $2,760 per month. C.R. at 14. In June 2012, she contacted Attorney Borjeson, who did not act to set aside the C&R agreement; he told her that he was not a Social Security attorney but believed that Social Security must have made a mistake and advised her to try and resolve the matter through Social Security. *Id*. at 15 & 17. At some point after that, she lost contact with Attorney Borjeson until 2018, when she was back in Pennsylvania and filed a *pro se* petition for reimbursement of rides to her medical appointments. *Id*. Because Attorney Borjeson was still listed as her attorney of record, the WCJ contacted him and he attended the hearing on Claimant's transportation petition. *Id*. When Claimant explained to Attorney Borjeson how her benefits had been reduced after the C&R, he again told her to resolve the matter through the Social Security office. *Id*. at 15-16.

Claimant experienced multiple difficulties communicating with the Social Security office before and during the COVID-19 pandemic. C.R. at 17. Then, in early 2021, her current treating physician, Dr. Zahl, referred her to a Social Security attorney who reviewed her file and told her that the Social Security office had made no errors. *Id*. At that point, her monthly SSD had been further reduced because her son turned 18 years old. *Id*. In November 2024, Dr. Zahl filed the subject miscellaneous petition on Claimant's behalf via WCAIS,[4] along with a letter explaining that he supported her desire to set aside the 2012 C&R because he believed that due to her brain injuries and overmedication with multiple narcotics

---

[4] WCAIS is the Workers' Compensation Bureau's web-based system for claims management and adjudication.

but without the corresponding stimulant to counteract those side effects, she was not cognitively fit when she signed the C&R. *Id*. at 42. Dr. Zahl averred that he began treating Claimant in September 2012, not long after the May 2012 hearing, and detected her incapacity at that time, which he confirmed by reviewing her medication history. *Id*. at 44-46.

Dr. Zahl stated that he had gotten Claimant off the narcotics and back to a capable cognitive status. C.R. at 44. He acknowledged that he was not an attorney but had agreed to help her file her petition because she was in dire financial straits, the attorney he referred her to confirmed that the Social Security office did not make a mistake as Attorney Borjeson maintained, and he believed that no one in a capable mindset with all of the proper information would have agreed to a C&R that lessened the benefits they would receive. *Id*. Dr. Zahl added that Attorney Borjeson could also have been misled as to Claimant's capacity at the time of the C&R because he was not a doctor familiar with the impact of Claimant's narcotic medications and need for a stimulant to counteract the narcotics. *Id*. at 48-49. Dr. Zahl volunteered to testify on Claimant's behalf. *Id*. at 54.

For reasons unclear in the record, the petition Dr. Zahl filed on Claimant's behalf via WCAIS was directed to the Board and not to a WCJ for adjudication. C.R. at 57. On December 31, 2024, the Board issued an order dismissing the petition for lack of jurisdiction. *Id*. at 62. The order explained that the Board primarily handles appeals from WCJ decisions and orders, which did not include Claimant's petition. *Id*. The Board added that its original jurisdiction is limited by statute to a handful of circumstances, none of which corresponded with Claimant's petition. *Id*. Although the Board could not address Claimant's petition, it advised her of several options, including retaining counsel to have an "appropriate

5

petition" filed for assignment to a WCJ or contacting the Workers' Compensation Helpline by phone for assistance. *Id*. The Board also advised that because Claimant's "physician has apparently adjudicated her incompetent," she could file a petition for a guardian to advocate for her interests, which is within the Board's original jurisdiction.[5] C.R. at 62.

Claimant instead appealed to this Court, asserting among other things that the Board wrongly dismissed her petition without a hearing in violation of her due process rights. *See* Petition for Review at 1-2. She stated that she had tried unsuccessfully to either find an attorney to help her file her petition or obtain WCAIS access for herself. *Id*. at 2-3. She strenuously objected to the Board's implication that she was still incompetent and required a guardian. *Id*. at 3. She averred that she did not intend for her petition to go to the Board, demanded to know why that had happened, and asserted that she urgently needed a hearing on her claims. *Id*. at 3-5. She asked this Court to vacate the 2012 C&R and order Attorney Borjeson to repay her the attorney's fees he received from the C&R. *Id*. at 5.

On May 9, 2025, Employer filed with this Court a motion to quash. Employer asserted that Claimant's attempt after 12 years to appeal the 2012 C&R was clearly untimely and because the Board lacked jurisdiction, so does this Court. Motion to Quash at 5-7. Employer added that Claimant's failure to timely appeal the C&R waived her claims and that her petition entailed multiple fatal procedural flaws and defects. *Id*. at 7-9. On July 31, 2025, this Court issued an order stating that Employer's motion would be considered along with the merits of Claimant's appeal. *See* Order, July 31, 2025.

---

[5] The Board appears to have misread or misunderstood Claimant's and Dr. Zahl's statements that Claimant's lack of competency existed when she signed the C&R in 2012 but that she had since sufficiently recovered to a comparatively functional status. *See id*. at 44.

6

On November 21, 2025, Claimant filed an application for emergency relief seeking a preliminary injunction. *See* Application for Relief, Nov. 21, 2025. Claimant indicated that Dr. Zahl now acknowledges a potential error when filing Claimant's petition via WCAIS that led to the petition going directly to the Board rather than to a WCJ. *Id*. at 3. Claimant averred that she was in significant financial straits and in danger of losing her home. *Id*. at 7. She asked this Court to direct Employer to resume her prior weekly workers' compensation payments in order to restore the status quo prior to the C&R. *Id*. at 18. On February 13, 2026, this Court denied Claimant's application for emergency relief because the application failed to establish a likelihood of success on the merits or any of the additional requirements for a preliminary injunction. Memorandum and Order, Feb. 13, 2026, at 7-9. Briefing has concluded and this matter is now ripe for disposition.

## II. Issues and Arguments

Claimant maintains that the Board erred by stating that she is currently incompetent and violated her due process rights by dismissing her petition on jurisdictional grounds without affording her a hearing where she planned to call Dr. Zahl and Attorney Borjeson as witnesses. Claimant's Br. at 13-15.[6] She asks this Court to review her case *de novo* in light of multiple alleged errors by the workers' compensation adjudication entities going back to the 2012 hearing. *Id*. at 15-16. She asserts that she contacted Attorney Borjeson as early as June 2012 with her concerns about the C&R but that he did nothing to help her. *Id*. at 18. She maintains that this Court must vacate the C&R, direct resumption of her weekly workers'

---

[6] References to Claimant's brief are by electronic pagination.

compensation benefits, and order Attorney Borjeson to return to her the $20,000 he received as attorney's fees from the C&R. *Id*.

Employer responds that the Board correctly dismissed Claimant's November 2024 petition for lack of both appellate and original jurisdiction. Employer's Br. at 10-11. Employer adds that due to the Board's lack of jurisdiction over Claimant's petition, it could not hold a hearing or provide her with any due process. *Id*. at 11-15. Employer adds that Claimant's attempt to overturn the C&R she agreed to in 2012 is clearly untimely, which presents another basis for the Board's lack of jurisdiction. *Id*. at 15-16. In the alternative, Employer maintains that the issue of Claimant's mental competency in 2012 when she signed the C&R, which was not timely appealed, is now barred by collateral estoppel and cannot be relitigated. *Id*. at 16-17 (citing *Stiles v. Workers' Comp. Appeal Bd. (Dep't of Pub. Welfare)*, 853 A.2d 1119, 1124 (Pa. Cmwlth. 2004) (concluding that collateral estoppel barred the claimant's attempt to set aside C&R a year after its finalization on basis of incompetence at time of C&R hearing)). Employer notes that Dr. Zahl, who filed the November 2024 petition, lacked standing to do so and is not an attorney authorized to act on Claimant's behalf. *Id*. at 18-19.

In a reply brief, Claimant defends Dr. Zahl's filing assistance and support, stating that she does not wish to be *pro se*, but is confident that given a fair hearing, she can prove that "many layers of deception" resulted in her being "duped into" the C&R agreement in 2012 and then losing her appeal rights because she continued to trust Attorney Borjeson. Claimant's Reply Br. at 3-5 & 10.

8

### III. Discussion

The Board is generally viewed as an appellate body that evaluates final adjudications by a WCJ.[7] *See Gregory v. Workers' Comp. Appeal Bd. (Narvon Builders)*, 926 A.2d 564, 568 (Pa. Cmwlth. 2007). The Workers' Compensation Act (Act)[8] empowers the Board to address matters firsthand via original jurisdiction only in certain circumstances, none of which is present here. These include certain aspects of claims for specific loss and occupational diseases, arrangements for benefits to be paid to a guardian or other individual when the beneficiary is a child or incompetent, payments to an unmarried partner of a claimant who dies, applications for commutation of future benefits into a lump sum, payment of benefits to a trustee for distribution to the beneficiary, and certain aspects of attorney's fees awards. *See* 34 Pa. Code § 111.31 (listing types of petitions and requests the Board may consider in its original jurisdiction).

Subject matter jurisdiction cannot be waived and may be raised at any stage of proceedings or *sua sponte* by the court, which includes the Board. *See Sellers v. Workers' Comp. Appeal Bd. (HMT Constr. Servs., Inc.)*, 713 A.2d 87, 89 (Pa. Cmwlth. 1998) (concluding that the Board's lack of jurisdiction could be raised *sua sponte* by a court). If the Board decides a jurisdictional question, the aggrieved party may appeal that determination to this Court for consideration in our appellate jurisdiction. *See Levantakos v. Workers' Comp. Appeal Bd. (Spyros Painting)*, 82 A.3d 481, 485 (Pa. Cmwlth. 2013) (affirming the Board's determination that the

---

[7] In workers' compensation matters, this Court's review is limited to a determination of whether constitutional rights have been violated, errors of law have been committed, or necessary findings of fact are unsupported by substantial evidence. *See, e.g., Czap v. Workmen's Comp. Appeal Bd. (Gunton Corp.)*, 587 A.2d 49, 51 (Pa. Cmwlth. 1991).

[8] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§ 1-1041.4, 2501-2710.

9

WCJ lacked jurisdiction over the claimant's petition). However, our jurisdiction over that appeal is limited to appellate review pursuant to Section 763 of the Judicial Code; likewise, our limited original jurisdiction to address matters firsthand pursuant to Section 761 of the Judicial Code does not extend to workers' compensation cases. *Compare* 42 Pa.C.S. § 763 (Commonwealth Court's appellate jurisdiction over direct appeals from all government agencies), *with* 42 Pa.C.S. § 761 (Commonwealth Court's original jurisdiction over enumerated matters not including appeals from workers' compensation adjudications).

Claimant's November 2024 petition, as filed in WCAIS, appears to have been intended to go to a WCJ for fact-finding and initial evaluation of her claims in support of her request to set aside the 2012 C&R. C.R. at 10-19. However, for reasons unclear other than Dr. Zahl's subsequent acknowledgement that an error may have occurred when he or his staff entered the petition into WCAIS, the petition went directly to the Board. *Id*. at 5 & 7. The Board stated in its December 2024 order that it could not assume appellate jurisdiction over a petition that had never been adjudicated by a WCJ. C.R. at 62. The Board also concluded that Claimant's petition did not fit within the limited circumstances where the Board may assume original jurisdiction.

We agree with the Board. The only possible "fit" in the Board's original jurisdiction would be if Claimant's petition sought appointment of a guardian to receive her benefits on her behalf due to her lack of competency. *See* 77 P.S. § 542. However, Claimant maintains that her competency issues, which were due to her excessive narcotics medication for her injuries at the time of the 2012 C&R, have since resolved due to Dr. Zahl's treatment and ability to modify her medications. *See* C.R. at 10; Petition for Review at 3. As such, the guardianship

10

aspect of the Board's original jurisdiction is not at issue here and the Board did not err in concluding that it lacked jurisdiction over Claimant's petition as filed.

As noted above, this Court's jurisdiction in this case is limited to our appellate capacity and Claimant's claims do not fall within our original jurisdiction. This Court, quite simply, cannot fulfill Claimant's wish that we consider her petition anew, conduct an evidentiary hearing, and determine in the first instance whether she is entitled to the relief she seeks. Those actions are the province of a WCJ.[9]

We recognize Claimant's apparent intent that her petition was to be directly assigned to a WCJ. Her acknowledgement in her November 2025 application for emergency relief that Dr. Zahl admits a possible error in filing her petition that resulted in it being initially assigned to the Board is as reasonable an explanation as any for what occurred here. While we affirm the Board's determination that it lacked jurisdiction to address the merits of Claimant's petition, we note specifically that the Board did not dismiss Claimant's petition with prejudice and advised her of several options to refile her petition in the proper manner.

---

[9] Because our appellate jurisdiction is limited to determining whether the Board correctly concluded that it lacked subject matter jurisdiction over Claimant's petition, we do not reach Employer's record-based claims in its motion to quash that Claimant's petition amounts to an untimely appeal of the WCJ's May 2012 C&R decision, that the untimeliness of that appeal waived Claimant's claims, or that Claimant's petition suffered fatal defects. As such, Employer's motion is denied as moot.

## IV. Conclusion

In light of the foregoing, the December 31, 2024, order of the Board dismissing Claimant's petition for lack of jurisdiction is affirmed. Employer's May 9, 2025, motion to quash is denied as moot.

_____
CHRISTINE FIZZANO CANNON, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Cynthia Sakmary,                          :
                          Petitioner      :
                                          :
            v.                            :
                                          :
Home Care Hospice, Inc. (Workers'         :
Compensation Appeal Board),               :      No. 127 C.D. 2025
                          Respondent      :

# **O R D E R**

AND NOW, this 22nd day of May, 2026, the December 31, 2024, order of the Workers' Compensation Appeal Board is AFFIRMED.  Employer Home Care Hospice, Inc.'s May 9, 2025, motion to quash is DENIED as moot.

_____
CHRISTINE FIZZANO CANNON, Judge