**Marvin BROOKS, Appellant,**

v.

**Louis SULLIVAN,\* Secretary of Health and Human Services, Appellee.**

No. 88–5252.

United States Court of Appeals, Eighth Circuit.

Submitted March 17, 1989.

Decided Aug. 24, 1989.

---

\* On March 9, 1989, Louis Sullivan was substituted as Secretary of Health and Human Services for Otis R. Bowen.

Mitchell D. Johnson, Rapid City, S.D., for appellant.

Robert Mandell, Asst. U.S. Atty., Rapid City, S.D., for appellee.

Before LAY, Chief Judge, and WOLLMAN and MAGILL, Circuit Judges.

WOLLMAN, Circuit Judge.

Marvin Brooks appeals his denial of disability insurance benefits, under 42 U.S.C. § 416(i), 423, and supplemental security income benefits, under 42 U.S.C. § 1382. We reverse and remand.

Brooks is a 48 year-old man with a ninth grade education. He has worked in construction and as a radiator repairman, but has had no formal training of any sort. In 1962, a construction crane boom broke

loose and hit Brooks from behind, breaking his back, left leg, and left hip. The injury to Brooks' back was severe. Three of his vertebrae were crushed, causing temporary paralysis and requiring surgical removal of the vertebrae. Surgery was also performed on his hip and leg, with a pin being inserted into the hip and a plate affixed to the femur. Brooks applied for disability benefits and apparently was declared disabled. Nevertheless, Brooks returned to work after he recovered from his accident. In 1978, Brooks suffered another fracture of his left leg. Two surgeries were performed, the first to remove the old plate and to install a new one, and the second to replate and fill in the fracture defect. After recovery, Brooks returned to work.

In 1983, Dr. Timothy Gill examined Brooks to investigate burning pain in Brooks' left thigh. Dr. Gill believed Brooks had "[s]tatus post plating of the left femur with pain probably secondary to irritation from plate and screws." Dr. Gill informed Brooks that if the burning sensation continued, he could remove the plate. Brooks never requested this surgery.

On September 21, 1986, Brooks' employer, Ed Reber, terminated Brooks' employment because of Brooks' inability to perform his required tasks.

On September 23, 1986, Brooks applied for disability and supplemental security income benefits. Subsequent to this application, Dr. Gill again examined Brooks. In a report dated November 25, 1986, Dr. Gill concluded the following:

> Status post severe injury to the lower back with a painful pseudoarthrosis [1] and some loss of structural integrity. Additionally, he has irritation of nerve roots in the left lower extremity, and persistent weakness. * * * I feel that the patient has done remarkably over the last 20 years, doing any kind of work at all. He worked in a radiator shop that required a lot of stooping, bending and lifting. I feel at this point, that the pain and instability in his back, contraindi-

cates this type of work. I think he should be restricted to a situation where he does no lifting or bending. He could be in a sitting type of situation with getting up for occasional short stands and walking.

In a second medical report, dated March 9, 1987, Dr. Gill wrote:

> [I]t is unlikely that [Brooks would] be able to hold down any job that requires a continued effort at either a sitting or standing job. The only type of employment he could do would be something that would tolerate * * * a need to change positions frequently and for somewhat extended periods of time.
>
> As far as his working in his radiator repair or even as a parts clerk, I think that i[t] would not be possible at this time. Therefore I would recommend that he be off of work.

The Social Security Administration denied Brooks' application for disability benefits initially and upon reconsideration. Thereafter, a hearing was held before an Administrative Law Judge (ALJ).

Brooks testified at the hearing that in June of 1985 the burning sensations in his left leg started getting worse. He did not seek any medical attention or treatment at the time because he was unable to afford to go to a doctor and because he believed that the leg problems were being caused by being on his feet too much. Brooks testified that his physical condition deteriorated to the point where, as of the time of the hearing, he had a burning sensation in his left leg and had lost control over the three smaller toes on his left foot. He also testified that his left leg falls asleep if he stands on it for more than thirty minutes. He testified that he experiences pain in his lower back if he sits or stands for any length of time. As a result of these physical problems, Brooks slowed down at work. He could no longer do the lifting that was required in the radiator repair shop, and he was forced to take more frequent and longer breaks on the job. As indicated above,

1. Pseudoarthrosis is movement between two parts of the same bone caused by the nonfusion of a fracture.

Brooks' inability to perform the duties of his job resulted in his being terminated by his employer.

Brooks' daily activities consist primarily of watching television, playing cards, visiting friends, and occasionally going fishing. He testified that he is unable to mow the lawn. He testified that he can walk for about two blocks at a time and that he can drive a car on short trips. He takes extra-strength Tylenol to ease his leg pain.

Brooks' testimony regarding his impairments and pain was corroborated by the testimony of his wife, Connie Brooks, and his former employer, Ed Reber.

Connie Brooks testified that her husband cannot sit for very long and that he has to get up and move around when his back starts bothering him. She testified that Brooks is unable to do much walking and that he suffers pain in his left leg when he stands. As an example of this, she testified that "he's tried cooking and he'll have to go sit down, his leg will just give out on him." She also testified that Brooks becomes exhausted after even light exertion and that in her opinion Brooks "can't do anything."

Ed Reber testified that Brooks had worked for him in his radiator repair shop from 1973 to October of 1986, when Reber found it necessary to terminate him. Reber testified that he had terminated Brooks because "he couldn't do the work. He'd have to go sit down. Lot's of time he'd—I seen were he work [sic] until his leg would flop off from under him and then he'd have to go sit down a lot. A lot of coffee breaks. A lot of people besides me noticed it too. He was taking a lot more breaks than he would ever have before." Reber testified that he had given Brooks some of his own Darvon pain pills that he, Reber, had obtained at the VA hospital. In response to the ALJ's question whether Reber had observed that Brooks had problems with his back, Reber responded that "Yes, he couldn't do the lifting and he couldn't stand. I would say his lower back and legs * * *."

The ALJ found that although Brooks was incapable of performing his past rele-

vant work, he was capable of doing a full range of sedentary work. He discounted Brooks' descriptions of his limitations, finding that Brooks' testimony was contradicted by the physician's report and therefore not credible. The ALJ found Brooks capable of performing a full range of sedentary work. Then, because he found no nonexertional impairments, the ALJ applied the Medical–Vocational Guidelines set forth in 20 C.F.R. Part 404, Subpart P, App. 2 and concluded that Brooks was not disabled. The ALJ made no mention of the testimony of Ed Reber or of Connie Brooks.

The district court, although stating that it was troubled by the ALJ's failure to discuss the testimony of Ed Reber and Connie Brooks, affirmed the denial of benefits.

The purpose of our review is to determine whether the Secretary's denial of benefits is supported by substantial evidence on the record as a whole, *see* 42 U.S.C. § 405(g), and whether the Secretary applied the proper legal standards in making this denial.

Brooks first contends that the ALJ's discounting of his testimony regarding his limitations is not supported by substantial evidence on the record. In evaluating the credibility of Brooks' testimony and complaints, we follow the analysis set forth in *Polaski v. Heckler,* 751 F.2d 943, 948 (8th Cir.1984):

The adjudicator must give full consideration to all of the evidence presented relating to subjective complaints, including the claimant's prior work record, and observations by third parties and treating and examining physicians relating to such matters as:

1. the claimant's daily activities;

2. the duration, frequency and intensity of the pain;

3. precipitating and aggravating factors;

4. dosage, effectiveness and side effects of medication;

5. functional restrictions.

\* \* \* Subjective complaints may be discounted if there are inconsistencies in the evidence as a whole.

The reports submitted by Dr. Gill and the testimony of Brooks, Ed Reber, and Connie Brooks are in agreement that Brooks suffers back pain, that he cannot lift heavy objects, that he cannot stand or sit for extended periods of time, and that he needs to take frequent breaks. At the hearing itself, Brooks needed to stand at one point during his testimony because of pain in his left leg and right knee.

■ The ALJ apparently discounted Brooks' testimony, in part because Brooks took no "potent pain relievers" for his discomfort and following his second accident only sought medical treatment in 1983 and 1986. With regard to the medical examinations, however, Brooks' physical difficulties first began to worsen in the summer of 1985. He testified that he had postponed his medical examination because he knew the basis of his medical problems and could not afford the expense of medical treatment. While lack of means to pay for medical services should not *ipso facto* preclude the Secretary from considering the failure to seek medical attention in credibility determinations, *see Benskin v. Bowen*, 830 F.2d 878, 884 (8th Cir.1987), Brooks' postponement of an examination alone, given the other evidence, does not warrant a finding of lack of credibility. With regard to the issue of medication, Brooks testified that he takes Extra–Strength Tylenol for his back pain. He also stated that he can greatly relieve his pain by standing and walking about for 10 to 15 minutes every 45 minutes to an hour. Brooks' failure to take potent pain relievers, therefore, is not inconsistent with his complaints of pain. The ALJ therefore erred in finding Brooks lacking in credibility and discounting his testimony.

■ The ALJ also erred in failing to consider and evaluate the testimony of Connie Brooks and Ed Reber, an omission that, as we indicated earlier, troubled the district court. We have held time and time again that the record must demonstrate that the Secretary evaluated all the evidence. *See, e.g., Johnson v. Secretary of Health and Human Services*, 872 F.2d 810, 813 (8th Cir.1989); *Chitwood v. Bowen*, 788 F.2d 1376, 1377–78 (8th Cir.1986); *Herbert v. Heckler*, 783 F.2d 128, 130 (8th Cir.1986).

■ It follows from what we have said above that the ALJ erred in applying the Guidelines. "Where a claimant suffers from a nonexertional impairment, such as pain, that significantly limits his or her ability to perform the full range of work contemplated by the Guidelines, the ALJ may not rely on the Guidelines to satisfy the Secretary's burden of proof, but must instead produce vocational testimony." *Chitwood v. Bowen*, 788 F.2d 1376, 1378 (8th Cir.1986). Brooks is hindered by a nonexertional impairment. He suffers from back pain, which requires him to walk about for 10 to 15 minutes every 45 minutes to an hour. Because this is inconsistent with the ability to perform sedentary work, which is predicated on the ability to sit for a prolonged period of time, *see id.;* 20 C.F.R. § 404.1567, it was incumbent upon the Secretary to produce testimony from a vocational expert. In the absence of such testimony, we have no choice but to reverse and remand for further proceedings.

In view of our disposition of this appeal, we find it unnecessary to rule upon Brooks' contention that he was denied a full and fair hearing because the ALJ became a partisan and assumed the role of counsel. We do note in passing, however, that the cold pages of the record tend to lend credence to Brooks' contention that the ALJ engaged in argumentative, somewhat truculent questioning. If this in fact occurred, we are confident that it will not reoccur during the new hearing on remand.

We reverse the judgment and remand with directions that the district court remand the case to the Secretary for further proceedings consistent with this opinion.