**Albert G. SMITH, Appellee,**

v.

**Louis W. SULLIVAN, M.D., Secretary of Health and Human Services, Appellant.**

**No. 92–1430.**

United States Court of Appeals, Eighth Circuit.

Submitted Sept. 18, 1992.

Decided Dec. 30, 1992.

**310**

Shushma Soni (argued), and Stuart M. Gerson, Charles A. Banks, Mark B. Stern and Nancy E. Friedman, Washington, DC, on the brief, for appellant.

Counsel who presented argument on behalf of the appellee was Lewis Huddle (argued), Little Rock, Ark., Sam Boyce, Newport, Ark., on the brief, for appellee.

Before McMILLIAN, WOLLMAN and LOKEN, Circuit Judges.

WOLLMAN, Circuit Judge.

The Secretary of Health and Human Services (the "Secretary") appeals from the district court's order reversing the Secretary's reduction of Albert G. Smith's social security disability benefits to zero. We reverse.

### I.

The facts of this case are not in dispute. Mr. Smith, now fifty-nine years old, worked as a self-employed farmer from 1951 until June 1986. In addition, he worked for the federal government from May 1962 until June 1986. Smith spent his last thirteen years in government service as a substitute mail carrier for the United States Postal Service.

During his years of employment, Smith paid social security taxes on the income that he derived from farming but not on his civil service earnings. Instead, Smith paid premiums to the Civil Service

Retirement System ("CSRS") on his government earnings. For purposes of the Social Security Act (the "Act"), earnings upon which an individual pays social security taxes are "covered" earnings and those upon which an individual pays no social security tax are "noncovered."

In June 1986, Smith was forced to retire due to arteriosclerotic heart disease. He filed a claim for civil service disability benefits based on his work for the federal government. He also filed a claim for social security disability benefits.

In September 1986, Smith began collecting approximately $721 per month in civil service disability benefits. In December 1986, the Social Security Administration ("SSA") found that Smith qualified for disabled status within the terms of the Act and awarded him approximately $430 per month in social security disability benefits retroactive to November 1986.

In October 1987, the SSA notified Smith that his social security disability benefits were being reduced to zero because the total amount of his civil service and social security disability benefits exceeded the applicable limit. The SSA informed Smith that he had been overpaid $4260 from November 1986 through August 1987.[1] The SSA stated that section 224 of the Act, 42 U.S.C. § 424a, required that Smith's civil service disability benefits be offset against his social security disability benefits. The SSA asserted that because Smith's civil service disability benefits of $721 per month exceeded the limit of $622.40 that Smith was entitled to receive under the social security offset provision, no social security disability benefits were payable.

Smith asked for reconsideration of the SSA's initial determination. The SSA reasserted its position that 42 U.S.C. § 424a's offset provision required Smith's social security disability benefits be reduced to zero.

Smith then requested a hearing before an administrative law judge ("ALJ"). Following a hearing, the ALJ agreed with the

1. The Secretary has subsequently waived any right to collect this alleged overpayment. Therefore, we are not concerned with any overpayment issue on this appeal.

SSA that the amount Smith received in civil service disability benefits alone exceeded section 424a's combined disability benefit limit, which determines a claimant's entitlement to social security disability benefits. The ALJ held that the SSA had correctly calculated the benefit limit and had properly reduced Smith's social security disability benefits to zero. When the Appeals Council denied Smith's request for further review, the ALJ's ruling became the final, appealable decision of the Secretary.

Smith appealed the ALJ's decision to the district court. With the consent of the parties, the district court referred the case to a magistrate judge, who held that the Secretary had erred in computing the applicable disability benefit limit under section 424a's offset provision. Specifically, the magistrate judge held that the Secretary had erroneously concluded that section 424a required the exclusion of Smith's noncovered government earnings from the calculation of his "average current earnings," which determines an individual's benefit limit. The magistrate judge rejected the Secretary's argument that the term "wages" in section 424a must be given the definition listed in another section of the Act, 42 U.S.C. § 409(a), which excludes government earnings. The magistrate judge looked instead to the legislative history of the offset provision in an attempt to divine Congress's intent. Relying on language from a Fifth Circuit opinion that section 424a "requires an offset of Social Security disability payments against workers' compensation benefits so that the total benefits received by the worker under the two programs do not exceed 80% of his *pre-disability income*," *Freeman v. Harris*, 625 F.2d 1303, 1306 (5th Cir.1980) (emphasis added), the magistrate judge concluded that the "[i]nclusion of [Smith's] wages as a postal worker in 'average current earnings' is in keeping with the purpose of section 424a and ensures that [Smith's] disability benefits are not reduced to a level far below his pre-disability income," (D.Ct.Mem. & Order of May 10, 1991, at 7). Accordingly, the magistrate judge remanded the case to the Secretary with directions to include Smith's noncov-

ered civil service earnings in a recalculation of his benefit limit.

The Secretary filed a timely appeal of the magistrate judge's order. The sole question before us is whether we should give the term "wages" in section 424a the technical meaning set forth in section 409(a), or whether we should construe it in a vernacular sense as a synonym for "income."

II.

■■■ We review a denial of benefits by the Secretary to determine whether the denial is supported by substantial evidence on the record as a whole, *see* 42 U.S.C. § 405(g), and whether the Secretary and the district court applied the proper legal standard in reaching their results. *See Brooks v. Sullivan*, 882 F.2d 1375, 1378 (8th Cir.1989). In the instant case, the issue for our review is a legal question of statutory interpretation, and therefore we address it de novo, with appropriate deference to the Secretary's interpretation of the Act. *Dep't of Social Servs. v. Bowen*, 804 F.2d 1035, 1037 (8th Cir.1986); *see also Sierra Club v. Robertson*, 960 F.2d 83, 85 (8th Cir.1992) (noting the Eighth Circuit's "usual practice of reviewing de novo a district court's application of law to undisputed facts").

The Act provides disability benefits for individuals who qualify as disabled under the Act's definitions. *See Locher v. Sullivan*, 968 F.2d 725, 727 (8th Cir.1992) (describing the five-step procedure employed to determine disability status). After an individual has established disabled status, the Secretary determines the individual's "primary insurance amount" ("PIA") by applying a percentage set forth in 42 U.S.C. § 415(a) to the claimant's "average indexed monthly earnings." *See* 20 C.F.R. §§ 404.211–12 (1992) (calculating average indexed monthly earnings on the basis of "wages, compensation, self-employment income, and deemed military wage credits ... that are creditable to [the claimant] for social security purposes for years after 1950").

■ The percentage used to calculate a claimant's PIA may be lowered if the claimant also receives a monthly periodic payment based in whole or in part on the claimant's earnings from service that does not qualify as "employment" under 42 U.S.C. § 410. 42 U.S.C. § 415(a)(7). This percentage reduction is commonly known as the "windfall reduction." The individual's PIA, as adjusted under the windfall reduction of section 415(a)(7) if required, determines the amount of monthly disability benefits payable to the claimant. *See* 42 U.S.C. § 415(a). In Smith's case, the Secretary used the lower percentage mandated by the windfall reduction provision to determine Smith's PIA and monthly benefit.

The Act also contains a disability benefit offset provision that the Secretary applies after he has determined an individual's PIA and monthly social security disability benefit. *See* 42 U.S.C. § 424a (entitled "Reduction of disability benefits").[2] Section 424a provides that an individual's social security disability benefits will be reduced, or offset, to a specified limit when the individual also receives another federal disability benefit. Section 424a supplies alternative methods of calculating the offset, but requires the utilization of the method that yields the highest benefit limit.

In this case, the parties do not dispute the appropriate method of calculating the offset. The parties agree that the offset method producing the greatest benefit limit is the "average current earnings" method. That method would reduce Smith's social security disability benefits to a level where the sum of the social security disability benefits and civil service disability benefits equals eighty percent of Smith's "average current earnings" prior to his disability.

■ The "average current earnings" method itself contains three alternatives. Section 424a defines "average current earnings" in three ways and requires that the definition which produces the largest "average current earnings" be utilized.[3] In Smith's case, the largest "average current earnings" results from the use of alternative (B), which determines the monthly average of the five highest consecutive years of "wages and self-employment income." (This alternative is commonly known as the "High Five" definition.)

In calculating Smith's "High Five" average, the Secretary included only Smith's self-employment farming income, because

2. 42 U.S.C. § 424a provides in pertinent part:
 (a) **Conditions for reduction; computation**
 If for any month prior to the month in which an individual attains the age of 65—
 (1) such individual is entitled to benefits under section 423 of this title, and
 (2) such individual is entitled for such month to—
 
 \* \* \* \* \* \*
 
 (B) periodic benefits on account of his or her total or partial disability . . . under any other law or plan of the United States . . . other than . . . (iv) benefits under a law or plan of the United States based on service all or substantially all of which is employment as defined in section 410 of this title,
 the total of his benefits under section 423 of this title for such month and of any benefits under section 402 of this title for such month based on his wages and self-employment income shall be reduced (but not below zero) by the amount by which the sum of—
 (3) such total of benefits under sections 423 and 402 of this title for such month, and
 (4) such periodic benefits payable (and actually paid) for such month to such individual under such laws or plans,
 exceeds the higher of—

 (5) 80 per centum of his "average current earnings", or
 (6) the total of such individual's disability insurance benefits under section 423 of this title for such month and of any monthly insurance benefits under section 402 of this title for such month based on his wages and self-employment income, *prior to reduction under this section.*

3. Section 424a defines "average current earnings" as follows:
 [A]n individual's average current earnings means the largest of (A) the average monthly wage . . . used for purposes of computing his benefits under section 423 of this title, (B) one-sixtieth of the total of his wages and self-employment income . . . for the five consecutive calendar years after 1950 for which such wages and self-employment income were highest, or (C) one-twelfth of the total of his wages and self-employment income . . . for the calendar year in which he had the highest such wages and income during the period consisting of the calendar year in which he became disabled . . . and the five years preceding that year.

the Secretary concluded that Smith's civil service earnings were neither "wages" nor "self-employment income." Including only the farming income resulted in an "average current earnings" amount of $778 per month. As section 424a directs, the Secretary then determined Smith's social security benefit limit by calculating eighty percent of the "average current earnings" amount to be $622.40. Finally, the Secretary reduced Smith's social security disability benefits to zero because Smith's civil service benefits of $721 per month exceeded the limit of $622.40.

### III.

■ Having set forth the general statutory scheme and the Secretary's application of the statute to Smith's earnings, we now turn to the technical issue disputed in this appeal. The Secretary and Smith disagree whether Smith's government earnings should have been included as "wages" in section 424a's "High Five" definition of "average current earnings." The magistrate judge concurred with Smith's position that the Secretary erred in not adding Smith's government earnings to his farm income in performing the "High Five" calculation.

For reversal, the Secretary argues that the language of the statute requires the exclusion of Smith's noncovered civil service earnings from the calculation of his "average current earnings." The Secretary asserts that the magistrate judge ignored the controlling statutory language and misinterpreted Congress's purpose in enacting the disability benefit offset. We agree.

Section 424a's "High Five" definition specifically employs the term "wages." Congress provided a definition of "wages" in the Act. 42 U.S.C. § 409(a). The relevant portion of section 409(a) defines "wages" as "remuneration paid after 1950 for employment."

The Act also contains a definition of "employment". 42 U.S.C. § 410(a). The relevant portion of section 410(a) defines "employment" as:

... any service, of whatever nature, performed after 1950 ... except that, in the case of service performed after 1950, such term shall not include ... (5) [s]ervice performed in the employ of the United States or any instrumentality of the United States, if such service—

(A) would be excluded from the term "employment" for purposes of this subchapter if the provisions of paragraphs (5) and (6) of this subsection as in effect in January 1983 had remained in effect, and

(B) is performed by an individual who—(i) has been continuously performing service described in subparagraph (A) since December 31, 1983, ... or (ii) is receiving an annuity from the Civil Service Retirement and Disability Fund, or benefits (for service as an employee) under another retirement system established by a law of the United States for employees of the Federal Government....

This definition of employment excludes all federal civil service prior to 1984, when the Federal Employment Retirement System ("FERS") became effective. Before 1984, federal employees, such as Smith, did not pay social security taxes on their government earnings; rather, they paid premiums under the CSRS. Pre–1984 federal civil service, therefore, was noncovered under the Act and was excluded from the Act's definition of "employment." Consequently, Smith's earnings from his pre–1984 federal civil service do not fall within the Act's definition of "wages."

Since the institution of FERS in January 1984, federal civil service may qualify as "employment" under the Act. Such government service, however, only falls within the Act's definition of "employment" if the employee elected to become subject to FERS. 42 U.S.C. § 410(a)(5)(H). If the employee has chosen not to participate in FERS, the employee's service does not qualify as "employment" and the individual's earnings are noncovered. 42 U.S.C. § 410(a)(5). Because Smith decided not to participate in FERS and did not pay social security taxes on his post–1984 federal

earnings, those earnings are also not "wages" under the Act's definition. The Secretary, therefore, also properly excluded those earnings from the calculation of Smith's "average current earnings."

■ In response, Smith presents two arguments. First, he appears to argue that the Secretary should not have applied the disability benefit offset at all in this case because the windfall reduction had been applied in determining Smith's PIA and Congress intended the windfall reduction to be exclusive when it applies. Because Smith did not file a cross-appeal on this issue, however, we need not address the concurrent application of the windfall reduction and disability offset provisions. *Bethea v. Levi Strauss and Co.*, 916 F.2d 453, 456 (8th Cir.1990) ("It is well-settled that failure to file a cross-appeal prohibits an appellee from attempting to enlarge her rights or to lessen her adversary's rights."). We merely note that Smith has provided no authority for his contention that Congress did not intend these two independent benefit limitations to be applied at the same time.[4]

■ Alternatively, Smith urges us to adopt the magistrate judge's broad vernacular construction of "wages," notwithstanding the Act's definition in section 409(a). He would have us ignore the Act's definition and read "wages" as a synonym for "income" or "earnings." He argues that construing "wages" broadly would effectuate Congress's intent in enacting section 424a's offset provision. He asserts that if Congress had intended that the Secretary apply the two reduction provisions concurrently, Congress could not then have additionally intended to exclude certain types of income in calculating the disability offset, citing *Freeman v. Harris*, upon which, as noted above, the magistrate judge primarily relied in reaching his decision.

In *Freeman*, the Fifth Circuit addressed the question whether the social security disability benefit offset should be applied concurrently with a similar offset under the "Black Lung Benefits Act." For guidance, the court looked to the purposes and legislative history of both statutes. In its summary of the history of section 424a, the Fifth Circuit stated that Congress had enacted section 424a "so that the total benefits received by the worker under [social security and another public program] do not exceed 80% of his *pre-disability income*." 625 F.2d at 1306 (emphasis added).

We conclude that the magistrate judge erred in relying upon the *Freeman* court's use of the word "income" to support his interpretation that, as used in section 424a, the term "wages" is synonymous with "income," for the Fifth Circuit used the word "income" rather than "wages" in the setting of a case that had nothing at all to do with the components of "average current earnings."

Congress used a term in section 424a for which it had created a technical definition in another section of the same law. "Generally, when the same words are used in different sections of the law, they will be given the same meaning." *Barnson v. United States*, 816 F.2d 549, 554 (10th Cir. 1987) (citing *Firestone v. Howerton*, 671 F.2d 317, 320 n. 6 (9th Cir.1982)), *cert. denied*, 484 U.S. 896, 108 S.Ct. 229, 98 L.Ed.2d 188 (1987). It stretches logic too far to assume that Congress used the term "wages" in section 424a to mean "income" when it had devoted an entire section of the law to defining "wages" for purposes of the Act. To the contrary, it is quite logical for Congress, in establishing an individual's social security disability benefit limit, to have defined "wages" in a manner that excludes earnings on which an employee has not paid social security taxes.

Moreover, the only court to address the construction of the term "wages" in section 424a held that the term should be given the definition provided in section 409(a). *Viney v. Gardner*, 310 F.Supp. 76, 78 (E.D.Mich.1970). In *Viney*, the Secretary had excluded certain earnings in calculat-

---

**4.** Smith's present counsel did not represent him in the district court, nor did he prepare the brief on appeal.

ing the claimant's "average current earnings" on the basis of another limitation in section 409(a)'s definition of "wages." The court rejected the claimant's argument that the term "wages" in section 424a should be read in a nontechnical manner, the same argument that Smith makes to us. *Id.* at 77–78. The court noted that the Senate report describing section 424a contained an illustration that included only earnings "credited to [the individual's] social security account" (i.e. covered wages) in calculating the individual's "average current earnings." *Id.* at 77 (quoting S.Rep. No. 404, 89th Cong., 1st Sess. (1965), *reprinted in* 1965 U.S.C.C.A.N.1943, 2200). The court concluded that "[t]he legislative history of Section 424a ... indicate[s] plainly that Congress understood Section 424a as originally enacted to provide that the term 'wages' was used as defined in 42 U.S.C. § 409." *Id.* at 78.

Smith points out that excluding his government earnings from the calculation of his "average current earnings" will reduce his benefits to a level substantially below his pre-disability income. Moreover, he considers it unjust that the disability offset will reduce his social security disability benefits to zero notwithstanding his payment of social security taxes on his farm income for many years.

However compelling these arguments, we must operate within the constraints of the law that Congress has enacted. Given the current statutory framework, we agree with the *Viney* court that "wages" must be read as defined in section 409(a). Accordingly, we hold that the Secretary correctly excluded Smith's noncovered civil service earnings from the calculation of his "average current earnings."

The order appealed from is reversed, and the case is remanded to the district court with directions that the Secretary's decision be reinstated.