Betty L. WRIGHT, Social Security No. 515–18–2129, Plaintiff,

v.

Donna E. SHALALA, Secretary of Health and Human Services, Defendant.

Civ. No. 3–92–70164.

United States District Court, S.D. of Iowa, Davenport Division.

Sept. 13, 1993.

John A. Bowman, Wells McNally & Bowman, Davenport, IA, for plaintiff.

John E. Beamer, Gene W. Shepard, U.S. Atty., Des Moines, IA, for defendant.

## MEMORANDUM OPINION AND ORDER OF REMAND TO THE SECRETARY

VIETOR, District Judge.

Plaintiff Betty Wright seeks judicial review of the Health and Human Services Secretary's decision denying disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.* This court may review a final decision by the Secretary. 42 U.S.C. §§ 405(g).

Wright filed an application for disability insurance benefits on November 15, 1990, alleging an onset of disability on December 26, 1978. The Social Security Administration denied her application initially and upon reconsideration. Wright requested a hearing which was held on October 9, 1991; she was not represented at the hearing. On December 16, 1991, an administrative law judge (ALJ) denied benefits. The Appeals Council denied Wright's request for review on October 16, 1992. Wright timely commenced this proceeding.

### ALJ's Findings

The ALJ found the following. Wright met the disability insured status requirements of the Act on December 26, 1978, and continued to meet them only through June 30, 1982. Wright has not engaged in substantial activity since December 26, 1978. The medical evidence shows that as of June 30, 1982, Wright had "severe coronary artery disease, a history of a heart attack, obesity, marginally-controlled Type II diabetes due to her poor cooperation in adhering to prescribed treatment, hyperlipidomia, hypertriglyceridemia and hypercholesterolemia," but that her impairments do not meet or equal the level of severity listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. The claimant's testimony that she experienced chronic and severe pain on or before June 30, 1982, is not credible. As of June 30, 1982, Wright had the residual functional capacity (RFC) to perform work "except for work involving lifting or carrying

more than 10 pounds at a time, or involving the prolonged standing or walking necessary for the performance of light work. There were no non-exertional limitations * * *." As of June 30, 1982, Wright's impairments did not prevent her from performing her past work; therefore, she was not disabled on or before the expiration of her insured status.

## The Record

At the hearing, plaintiff testified to the following. She worked as a secretary at a trucking company for several years until July or August of 1978, when she quit because the company was closing. Appendix (App.) at 36. At this job, she typed checks and forms, and used the adding machine. App. at 36, 71. She was seated throughout the day, occasionally had to bend or reach, but she did not have to lift anything. App. at 37, 72. She suffered a heart attack in December 1978. App. at 37, 96–101. After the heart attack, plaintiff's doctor told her not to do anything or lift anything heavier than a spoon, and just to take care of herself. App. at 37. She was able to bathe and dress herself, fix meals (mostly for herself only, because her husband was on the road much of the time), do the laundry, and drive a car. App. at 40. She could lift groceries (although she did not carry that many), and clean house (but someone else did the vacuuming). App. at 41. She did what she could do around the house; if she could not finish it, she would let it go until another time. App. at 42. She spent her day reading and doing what she had to do, what she could do, and what she felt like doing. *Id.* She did embroidery and sewed. *Id.* After her heart attack she lost the strength and power to do the things that she used to do. *Id.* She wore a heart patch, took insulin, and used nitroglycerine when she needed it—once a month or once a week on average. App. at 42–43. She would have chest pain if she did something exertionally demanding—even trying to take a lid off a jar—and the pain would not go away until she had taken three or four nitroglycerine pills. App. at 43.

Plaintiff's husband testified that plaintiff was not able to go fishing or on picnics like she used to, and that because all the children were gone and he was gone much of the time, her household duties were light. App. at 44.

Plaintiff's physical examination at the time of her heart attack in 1978, revealed the following: "(1) acute inferior myocardial infarction; (2) adult onset diabetes mellitus in poor control; (3) hypercholesterol and hypertriglyceridemia with recurrent periorbital xanthelasma; (4) mild obesity; (5) poor medical compliance." App. at 100.

Medical notes from January 1979 through July 1982, show some complaints of chest pain in 1979 and 1980. App. at 206, 208. Although these handwritten notes are difficult to decipher in places, the notes during the latter half of 1980, all of 1981, and the first half of 1982, appear to involve mostly prescription refills, with some complaints of head and chest congestion, backache, diarrhea, and sore throat. App. at 203–05.

The ALJ asked plaintiff's husband at the hearing if there were any further diagnoses between 1978 and 1983, and he responded:

I can't think of anything very significant. She continued with her regular doctor from time to time, but I don't remember anything really significant in between them times. To my estimation, in following it all the way through, as time went on, she kept deteriorating or getting a little worse, her condition, as it went, you know, from time.

App. at 39–40.

A.R. Swearingen, M.D., in a letter dated March 20, 1991, indicated that he had intermittently treated her from the time of her heart attack in 1978 until he left his clinical practice in late 1989; he noted that she received the majority of her care at University of Iowa Hospitals & Clinics. App. at 255. His impression was that "during that period of time her persistent angina pectoris and congestive heart failure, along with her poorly controlled diabetes mellitus, precluded her from active employment and would have, in my view, been disabled due to these conditions." *Id.*

## Discussion

Plaintiff argues that the ALJ erred by: (1) discounting pain and other subjective complaints without analysis; (2) discounting her treating physician's opinion; (3) concluding

without support in the record that she could return to her past work prior to her date last insured; and (4) failing to fully and fairly develop the record. The standard of review of an ALJ's decision is whether substantial evidence on the record as a whole supports the opinion, and whether the ALJ applied the proper legal standards. *Brooks v. Sullivan,* 882 F.2d 1375, 1378 (8th Cir.1989).

### Subjective complaints

■ "[I]t is for the ALJ in the first instance to evaluate the credibility to be accorded a claimant's subjective complaints of pain." *Delrosa v. Sullivan,* 922 F.2d 480, 483 (8th Cir.1991).

> An ALJ, however, may not disregard a claimant's subjective complaints of pain solely because of a lack of objective evidence. To the contrary, the ALJ may discredit subjective complaints of pain only if they are inconsistent with the evidence on the record as a whole. Furthermore, where an ALJ rejects a claimant's testimony regarding pain, he must make an express credibility determination detailing his reasons for discrediting the testimony.

*Id.* at 485.

The ALJ first states that plaintiff "has described functional limitations and symptoms, including pain, that are out of proportion to the objective signs and findings which existed prior to the expiration of her insured status * * *." App. at 18. He then acknowledges that because plaintiff's subjective complaints are medically determinable, he must evaluate them according to SSR 88–13, and lists the factors he must consider. *Id.* After listing the factors, he states that

> [u]pon consideration not only of the objective medical signs and findings (SSR 87–19c), but also the relevant credibility factors described in SSR 88–13, I find that the claimant's allegations concerning her symptoms of chronic and severe chest pain and attendant functional limitations due to her cardiac condition on and prior to June 30, 1982 are not credible.

*Id.* This conclusory statement, without further discussion of what the record shows regarding the factors in this case, and without detailing reasons why plaintiff's testimo-

ny is inconsistent with the record as a whole, is insufficient under SSR 88–13 and Eighth Circuit case law. *See, e.g., Jernigan v. Sullivan,* 948 F.2d 1070, 1073 (8th Cir.1991) (ALJ must set forth the inconsistencies in the record that lead the ALJ to reject plaintiff's complaints).

### Treating Physician's Opinion

■ The opinion of a treating doctor is entitled to great weight unless "unsupported by medically acceptable clinical or diagnostic data." *Ghant v. Bowen,* 930 F.2d 633, 639 (8th Cir.1991) (citation omitted). The ALJ must not substitute his own medical opinion for that of the doctor. *See Ness v. Sullivan,* 904 F.2d 432, 435 (8th Cir.1990).

■ The ALJ states that plaintiff's "primary impairment is her Type II diabetes mellitus, complicated by her obesity, hypertriglyceridemia, and hyperlipidemia," and that those conditions "do not substantiate the claimant's reports of experiencing significant cardiac chest pain prior to the expiration of her insured status." App. at 18. Therefore, the ALJ concludes, "the combination of persistent angina pectoris, congestive heart failure, and poorly controlled diabetes mellitus referred to in a statement by her treating physician, Dr. Swearingen, clearly post-dates the claimant's date last insured." *Id.*

Dr. Swearingen's letter, however, expressly discusses the period from her heart attack at the end of 1978 until 1989, and says plaintiff was disabled "during that period of time." App. at 255. Dr. Swearingen does not limit his statement to exclude the time period relevant to this case. Furthermore, the ALJ improperly substitutes his own medical opinion by identifying what he believes to have been plaintiff's "primary impairment" and its attendant symptoms in order to discredit Dr. Swearingen's opinion.

### Past Relevant Work/Duty to Develop the Record

■ Given the remand based on the ALJ's conclusion as to plaintiff's credibility, and the connection between that conclusion and plaintiff's remaining arguments, I need not address those arguments in detail.

■ In assessing plaintiff's ability to perform her past work, the ALJ must compare the findings of plaintiff's limitations and how

they affect her RFC, to the findings of the actual demands of her past work; "[a] conclusory determination that the claimant can perform past work * * * does not constitute substantial evidence that claimant can return to [her] past work." *Groeper v. Sullivan,* 932 F.2d 1234, 1238–39 (8th Cir.1991) (citation omitted). The ALJ also must explore and consider plaintiff's alleged loss of strength and fatigue upon exertion. *See* App. at 42–43. The ALJ has a duty to develop the record even when the claimant is represented by counsel, *see Boyd v. Sullivan,* 960 F.2d 733, 736 (8th Cir.1992), and here plaintiff was unrepresented at the hearing.

### Decision and Order

Because the Secretary's decision is not supported by substantial evidence on the record as a whole, IT IS ORDERED that the decision of the Secretary is REVERSED and the case is REMANDED to her for further proceedings and a new decision in accordance with this opinion.

This remand is under the fourth sentence of 42 U.S.C. § 405(g), and the judgment to be entered will trigger the running of the time in which to file an application for attorney's fees under 28 U.S.C. § 2412(d)(1)(B) (Equal Access to Justice Act). *See Shalala v. Schaefer,* —— U.S. ——, 113 S.Ct. 2625, 125 L.Ed.2d 239 (1993).