98 F.3d 1333
 NOTICE: First Circuit Local Rule 36.2(b)6 states unpublished opinions may be cited only in related cases.
Nancy TREMBLAY, Plaintiff, Appellant,
v.
Louis SULLIVAN, Secretary of Health and Human Services,
Defendant, Appellee.
 No. 95-2267.
 United States Court of Appeals, First Circuit.
 Oct. 10, 1996.
 
 Nancy Tremblay on brief pro se.
 Donald K. Stern, United States Attorney and Thomas D. Ramsey, Assistant Regional Counsel, on brief for appellee.
 Before TORRUELLA, Chief Judge, CYR and STAHL, Circuit Judges.
 PER CURIAM.
 
 
 1
 Claimant Nancy Tremblay appeals a district court order upholding a decision of the Commissioner of Social Security that reduced her Social Security disability benefits to zero due to her receipt of a disability pension under the Civil Service Retirement System (CSRS). We affirm.
 
 I.
 Undisputed Facts
 
 2
 The relevant facts are as follows. Claimant is a former accountant for the U.S. Army Corps of Engineers who suddenly went blind at the age of 27 due to a rare hereditary disorder (Leber's optic neuropathy). This condition rendered her disabled within the meaning of 42 U.S.C. § 423. Prior to becoming disabled, claimant had worked in the private sector between 1977 and 1981, earning wages that were "covered" by Social Security. See Das v. Secretary of Health and Human Services, 17 F.3d 1250, 1253 & n. 2 (9th Cir.1994)("For purposes of the Social Security Act, wages upon which an individual pays social security taxes are 'covered' wages and those upon which an individual pays no social security tax are 'noncovered.' " (citation omitted)). Between 1983 and 1987, claimant worked for the federal government, earning wages that were not covered by Social Security but that rendered her eligible to receive a disability pension under the CSRS after she became blind.
 
 
 3
 Claimant applied for Social Security disability benefits (SSDI) and for disability retirement benefits under the CSRS. She began receiving benefits under both programs in late 1988 and early 1989.[1] Toward the end of 1989, the Social Security Administration (SSA) notified claimant that her Social Security benefits should have been withheld due to her receipt of the CSRS pension. The SSA's determination was based on the offset provision in 42 U.S.C. § 424a. The Offset Provision
 
 
 4
 Congress enacted § 424a in 1965 in response to renewed concern that many disabled workers were receiving disability payments in excess of their working wages as a result of their dual eligibility for benefits under the federal Social Security and state worker's compensation programs. It was believed that, inter alia, this situation decreased a worker's incentive to return to work. Consequently, Congress enacted § 424a, "which, by limiting total state and federal benefits to 80% of the employee's average current earnings prior to disability, reduced the duplication inherent in the programs and at the same time allowed a supplement to workmen's compensation when the state payments were inadequate." Richardson v. Belcher, 404 U.S. 78, 83 (1971)(holding § 424a does not violate the Due Process Clause).
 
 
 5
 This court and others have indicated in dicta that § 424a generally allows disabled workers to retain 80% of their pre-disability income or earnings before their Social Security benefits will be reduced under the offset provision. See, e.g., Davidson v. Sullivan, 942 F.2d 90, 92 (1st Cir.1991)(noting that under § 424a total worker's compensation and social security benefits may not exceed 80% of worker's "predisability income"); Sciarotta v. Bowen, 837 F.2d 135, 140 (3d Cir.1988)(noting that in enacting § 424a, Congress "intended to 'limit[ ] total state and federal benefits to 80% of the employee's average earnings prior to the disability' ") (citation omitted); Swain v. Schweiker, 676 F.2d 543, 544 (11th Cir.), cert. denied, 459 U.S. 991 (1982)("[g]enerally, the [§ 424a] offset applies when the total of an individual's benefits and worker's compensation exceeds 80% of his or her pre-disability earnings and it reduces the federal benefits by the excess"); Freeman v. Harris, 625 F.2d 1303, 1306 (5th Cir.1982)(similar). But the statute does not mandate this result in every case.
 
 
 6
 With certain exceptions immaterial to the present case, § 424a provides that in any given month in which an individual under age 65 is entitled to both Social Security disability benefits under 42 U.S.C. § 423 and other periodic disability benefits, e.g., those paid under worker's compensation or under any other law or plan of the United States, the total Social Security disability benefits and any related § 402 benefits based on that individual's wages and self-employment income (e.g., child's benefits):
 
 
 7
 shall be reduced (but not below zero) by the amount by which the sum of -
 
 
 8
 (3) such total ... [Social Security] benefits under sections 423 and 402 ..., and
 
 
 9
 (4) such periodic benefits payable (and actually paid) ... under such laws or plans,
 
 
 10
 exceed the higher of -
 
 
 11
 (5) 80 per centum of ... [the individual's] "average current earnings", or
 
 
 12
 (6) the total of such individual's [Social Security] disability insurance benefits under section 423 ... and of any monthly insurance benefits under section 402 ... prior to reduction under this section.
 
 
 13
 Thus, § 424a requires that a person's Social Security benefits be reduced by the amount by which the sum of his Social Security and other disability benefits exceeds the higher of: (a) 80% of his "average current earnings" as defined by § 424a, or (b) his total Social Security benefits. The statute goes on to define "average current earnings", in relevant part, as the largest of:
 
 
 14
 (A) the average monthly wage ... used for purposes of computing ... [the individual's Social Security] benefits under section 423 ...,
 
 
 15
 (B) one sixtieth of the total of ... [the individual's] wages and self-employment income ... for the five consecutive calendar years after 1950, for which such wages and self-employment income were highest, or
 
 
 16
 (C) one-twelfth of the total of ... [the individual's] wages and self-employment income ... for the calendar year in which he had the highest such wages and income during the period consisting of the calendar year in which he became disabled ... and the five years preceding that year.[2]
 
 
 17
 See 42 U.S.C. § 424a.
 
 Claimant's Case
 
 18
 In applying the offset provision, the SSA determined the claimant's "average current earnings" under the "High 5" method based on the wages that she earned during her first years of "covered" employment, i.e., 1977-1981.[3] Eighty percent of her "average current earnings," as so calculated, was $307.20, an amount substantially less than claimant's total Social Security benefits. When the latter was subtracted from the sum of claimant's Social Security and CSRS benefits, as required by § 424a(a)(3)-(6), the $919 CSRS benefit was left as the amount to be "offset", or subtracted from, claimant's total Social Security benefits. However, since claimant's CSRS benefit exceeded her Social Security benefits, and § 424a prohibits reducing Social Security benefits below zero, application of a $919 offset effectively reduced claimant's Social Security benefits to zero.
 
 
 19
 Claimant disputed the SSA's computations and requested reconsideration. The SSA reaffirmed its position both on reconsideration and in a subsequent decision by an administrative law judge (ALJ), who found that the offset provision had been properly applied. The Appeals Council upheld the ALJ's decision, thus rendering it the final decision of the Commissioner.
 
 
 20
 Claimant thereafter commenced this proceeding for judicial review, arguing, inter alia, that Congress did not foresee her situation when it enacted § 424a and that the SSA's application of the offset provision resulted in an undue hardship on her. Noting that her remaining CSRS benefit fell substantially short of 80% of her pre-disability earnings, claimant maintained that the SSA should have computed her "average current earnings" based on her non-covered federal earnings from 1983-1988, a method that would leave her Social Security benefits intact. Claimant urged the district court to follow a similar unpublished case which reinstated a blind claimant's Social Security benefits after the SSA had eliminated them under the offset provision. See Dunkin v. Secretary of Health and Human Services, No. 1-C-85-1801, slip op., 1987 WL 109706 (S.D.Ohio, 1987)(holding SSA erred in reducing claimant's benefits to zero after computing his "average current earnings" based only on his years of covered employment).[4]
 
 
 21
 The district court upheld the Commissioner. The court rejected claimant's contention that the offset provision should not apply to blind persons, reasoning that other provisions of the Social Security Act and regulations showed that Congress and the Commissioner clearly knew how to make exceptions for the blind when they wished to do so. Relying on Smith v. Sullivan, 982 F.2d 308, 311-15 (8th Cir.1992)(holding that SSA correctly excluded claimant's non-covered federal earnings from calculation of his "average current earnings"), the court also found that the SSA properly calculated the offset. Claimant appeals this decision.
 
 II.
 
 22
 The discrete question before us is whether the claimant's "average current earnings", as defined in § 424a, were properly based only on claimant's years of "covered" employment or whether, as claimant contends, they instead should have been based on her most recent years of "non-covered" employment. Our standard of review is well-established:
 
 
 23
 When a court reviews an agency's construction of the statute which it administers, it is confronted with two questions. First, always, is the question whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter, for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress. If, however, the court determines Congress has not directly addressed the precise question at issue, the court does not simply impose its own construction of the statute, as would be necessary in the absence of an administrative interpretation. Rather, if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute.
 
 
 24
 Chevron U.S.A. v. Natural Resources Defense Council, 467 U.S. 837, 842-43 (1984).
 
 
 25
 While claimant concedes that a literal interpretation of § 424a compels the conclusion that "average current earnings" must be based on "covered earnings," she urges us to reject such an interpretation in favor of one which comports with her view of Congressional intent.[5] As we explain below, we reject claimant's arguments, for they are not supported by either the plain language of the statute nor a fair reading of its legislative history. We begin with the language of the statute. See Stowell v. Secretary of Health and Human Services, 3 F.3d 539, 542 (1st Cir.1993). The Statute
 
 
 26
 We first observe that nothing on the face of § 424a indicates whether claimant's "average current earnings" may be based only on "covered" earnings. The Commissioner argues that the plain language of 42 U.S.C. §§ 409(a) and 410(a) requires the exclusion of claimant's "non-covered" earnings from the computation of her "average current earnings" because her federal earnings may not be deemed "wages" under the Social Security Act. We agree.
 
 
 27
 The definition of "average current earnings" in § 424a(a) depends on either the "average monthly wage" used to compute a claimant's Social Security benefits or the claimant's "wages and self-employment income."[6] The Social Security Act defines the term "wages" as "remuneration paid ... after 1950 for employment...." 42 U.S.C. § 409(a). The definition of the term "employment" excludes service such as that performed by claimant for the federal government. See 42 U.S.C. § 410(a).[7] It follows, then, that because claimant's federal service does not qualify as "employment," her federal earnings may not be deemed "wages" for purposes of computing her "average current earnings" under the offset provision. Accord Smith v. Sullivan, 982 F.2d at 313-15; Prather v. Shalala, 844 F.Supp. 239, 240-41 (D.Md.1993), aff'd, 14 F.3d 595( 4th Cir.1994); Clevinger v. Sullivan, 813 F.Supp. 421, 422 (E.D.Va.1993); cf. Viney v. Gardner, 310 F.Supp. 76, 77-78 (E.D.Mich.1970)(holding term "wages" in § 424a is defined by § 409(a)).
 
 
 28
 The plain meaning of a statute's text must be given effect "unless it would produce an absurd result or one manifestly at odds with the statute's intended effect." Parisi by Cooney v. Chater, 69 F.3d 614, 617 (1st Cir.1995). Relying on excerpts from § 424a's legislative history, claimant contends that the offset resulting from the exclusion of her non-covered federal earnings from the computation of her "average current earnings" violates Congress's intent to leave disabled workers with 80% of their pre-disability earnings. She maintains that her CSRS pension equals only 31.7% of the monthly salary she earned before she became blind and that Congress expressly intended to avoid leaving disabled workers with such a slim amount. Claiming that "overwhelming" case law supports her position, claimant urges us to reject a literal interpretation of the statute in favor of one that furthers Congress's intent to leave disabled workers with 80% of their pre-disability earnings.[8]
 
 
 29
 While we recognize the ongoing debate over the propriety of using legislative history as a means to discern a statute's intent, see, e.g., Strickland v. Commissioner, Dept. of Human Services, 48 F.3d 12, 17 (1st Cir.), cert. denied, 116 S.Ct. (1995)(collecting cases), we will assume that we "may consult relevant legislative history ... to confirm an interpretation indicated by the plain language [ of a statute]." Grunbeck v. Dime Savings Bank of New York, FSB, 74 F.3d 331, 336 (1st Cir.1996). We conclude that the legislative history, while occasionally ambiguous, on the whole supports the Commissioner's interpretation of the statute.
 
 Legislative History
 
 30
 Claimant is correct that the Senate Finance Committee report that accompanied § 424a, as originally enacted, indicates that Congress intended the offset provision to leave disabled workers with 80% of their "average monthly earnings prior to the onset of disability." However, the latter phrase was qualified. The report states that:
 
 
 31
 The new offset provision ... provides for a reduction in the social security disability benefit (except where the State workmen's compensation law provides for an offset ... ) in the event that the total benefits paid under the two programs exceed 80 percent of the worker's average monthly earnings prior to the onset of disability. Under this provision, the worker's average monthly earnings would be defined as the higher of (a) his average monthly wage used for purposes of computing his social security disability benefit or (b) his average monthly earnings, in employment covered by social security, during his highest 5 consecutive years after 1950.... This reduction formula would generally avoid the inequity encountered under the previous offset provision, where the reductions that were required frequently resulted in benefits that replaced no more than 30 percent or so of the worker's earnings at disablement.
 
 
 32
 S.Rep. No. 404, 89th Cong., 1st Sess., 100 (1965), reprinted in 1965 U.S.Code Congressional and Administrative News 1943, 2040. (emphasis supplied). The emphasized language shows that Congress intended "average current earnings" to be synonymous with "covered" earnings. This assumption is repeated in other parts of the Senate Report. See id. at 2041 (describing hypothetical application of § 424a in which worker's "average monthly wage" is based on his "average covered earnings"); id. at 2200 (computing worker's "average current earnings" based on wages and income "credited to his social security account"). Thus, when the legislative history excerpts that claimant cites are read in context, it appears that Congress was speaking only of "covered" earnings when it expressed a desire to leave disabled workers with 80% of their pre-disability earnings and to avoid leaving workers with only 30% of such earnings.[9]
 
 
 33
 In short, the plain language of the Social Security Act, 42 U.S.C. §§ 409, 410 and 424a, directs the exclusion of claimant's non-covered federal earnings from the calculation of her "average current earnings" and the offset applied here. Apart from a single excerpt referring to "non-covered wages," the legislative history of § 424a confirms this result. Whatever doubts might be raised by this excerpt are put to rest by more recent developments. We note that in January 1989, Senator Moynihan offered an amendment to the offset provision that would have specifically allowed the non-covered earnings of former public employees such as claimant to be considered in calculating "average current earnings." See S. 213, 101st Cong., 1st Sess. 1115 (1989). That amendment was not passed. See Prather v. Sullivan, 844 F.Supp. at 241 n. 1; Clevinger v. Sullivan, 813 F.Supp. at 422 n. 2. "To be sure, non-action by Congress is ordinarily a dubious guide" to legislative intent. Brown v. Secretary of Health and Human Services, 46 F.3d 102, 108 (1st Cir.1995). But thereafter, the SSA promulgated Social Security Ruling (SSR) 92-2a. That ruling indicated that the Commissioner would require "average current earnings" to be based only on "covered" earnings. Although the offset provision has been amended in other respects since this ruling was published, Congress has done nothing to alter the Commissioner's interpretation of "average current earnings." This strongly suggests that the Commissioner's interpretation comports with Congress's intent. Cf. United States v. Rutherford, 442 U.S. 544, 554 n. 10 (1979)(Congressional inaction after agency position has been fully brought to the attention of the public and Congress suggests agency has correctly discerned legislative intent).[10]
 
 III.
 Conclusion
 
 34
 Where the plain language and legislative history of the statute indicate that the Commissioner's interpretation is consistent with Congress's intent, this court may not devise a contrary interpretation. We further discern no due process or equal protection violation arising from the fact that the plaintiff in Dunkin had his Social Security benefits reinstated while claimant's benefits have been eliminated. Apart from the fact that Dunkin lacks precedential value as an unpublished decision, it was decided before the SSA promulgated SSR 92-2a. "An agency that is charged with administering a statute remains free to supplant prior judicial interpretations of that statute as long as the agency interpretation is ... reasonable...." United States v. LaBonte, 70 F.3d 1396, 1405 (1st Cir.1995), cert. granted, 116 S.Ct. 2545 (1996).[11] At bottom, claimant's arguments challenge the Commissioner's policy judgment that non-covered earnings must be excluded under the offset provision. "When a challenge to an agency construction of a statutory provision, fairly conceptualized, really centers on the wisdom of the agency's policy, rather than whether it is a reasonable choice within a gap left open by Congress, the challenge must fail." Chevron v. Natural Resources Defense Council, 467 U.S. at 866. Accordingly, the judgment of the district court is affirmed.
 
 
 
 [1]
 Claimant's CSRS benefits were $919 per month. Claimant's Social Security benefits totalled approximately $540 per month. This figure included claimant's monthly SSDI benefit and an additional sum in child's benefits that claimant received on behalf of her daughter
 
 
 [2]
 The computation method outlined in subparagraph (B) is called the "High 5" method, while that outlined in subparagraph (C) is called the "High 1" method. Both methods compute "average current earnings" without regard to the limitations on the maximum earnings creditable for Social Security purposes specified in 42 U.S.C. §§ 409(a)(1) and 411(b)(1)
 
 
 [3]
 These wages were much lower than those claimant earned during her last years of "non-covered" employment as an accountant with the federal government
 
 
 [4]
 Claimant also argued that Congress did not intend the offset provision to apply to her because other sections of the Social Security Act and regulations treat blind claimants more leniently than those with other disabilities
 
 
 [5]
 Claimant also contends that the Commissioner's interpretation of "average current earnings" violates due process and equal protection because the claimant in Dunkin was allowed to keep his Social Security benefits while claimant's Social Security benefits have been eliminated
 
 
 [6]
 As claimant was never self-employed, and does not contend that her average current earnings should have been based on the average monthly wage used to compute her Social Security benefits, we confine our analysis to the meaning of the term "wages."
 
 
 [7]
 42 U.S.C. § 410(a) excludes from the definition of "employment" any post-1950 "[s]ervice performed in the employ of the United States ... if such service--(A) would be excluded from the term 'employment' for purposes of this subchapter if the provisions of paragraphs (5) and (6) of this subsection as in effect in January 1983 had remained in effect, and (B) is performed by an individual who--... (ii) is receiving an annuity from the Civil Service Retirement and Disability Fund...." Tremblay worked for the federal government after 1950 and receives a CSRS annuity. Her work would have been excluded from the definition of "employment" if pp 5 and 6 of § 410 as in effect in January 1983 had remained in effect, for the latter paragraph excluded from the definition of employment federal service covered by a retirement system established by federal law. Consequently, claimant's federal work is excluded from the definition of "employment."
 
 
 [8]
 Claimant contends that such cases as Sciarotta v. Bowen, 837 F.2d at 138; Swain v. Schweiker, 676 F.2d at 546-47; and Merz v. Secretary of Health and Human Services, 969 F.2d 201, 206 (6th Cir.1992), support her contention that this court should reject the literal meaning of the statute in favor of one which furthers Congressional intent. Neither these nor the remaining cases that claimant cites address the precise issue before us. Therefore, they are not controlling
 
 
 [9]
 Subsequent legislative history that accompanied the early amendments to § 424a also supports the view that Congress intended "average current earnings" to be based only on "covered" earnings. See, e.g., S.Rep. No. 744, 90th Cong., 1st Sess. (1967), reprinted in 1967 U.S.C.C.A.N. 2834, 2884 (noting that "average current earnings" under § 424a equalled the larger of a worker's average monthly wage used for computing his social security benefit or his average monthly earnings during the 5 consecutive years of highest covered earnings after 1950); H. Rep. No. 231, 92d Cong., 2d Sess. 57 (1972), reprinted in 1972 U.S.C.C.A.N. 4989, 5044 (same). The only contrary indication that we have been able to find appears in a Senate Budget Committee Report that accompanied the Omnibus Budget Reconciliation Act of 1981. Inter alia, that Act extended the offset provision so that it would apply to individuals receiving disability benefits from federal, state, or local governments. The Budget Committee report, in an apparent reference to the "High 1" method, says that, "average current earnings generally refers to the highest annual amount of covered and non-covered wages earned during the 6-year period consisting of the year in which the worker becomes disabled and the 5 preceding years...." S.Rep. No. 139, 97th Cong., 1st Sess. 428 (1981), reprinted in 1981 U.S.C.C.A.N. 693, 694 (emphasis supplied). This single statement is alone insufficient to undermine the previous expressions of Congressional intent to base "average current earnings" only on "covered" earnings. "Congress cannot amend a statute merely by inserting the proposed change in a congressional report...." Strickland v. Commissioner, Dept. Human Services, 48 F.3d at 18
 
 
 [10]
 As other courts have noted, there are several reasons why the decision to base "average current earnings" only on "covered earnings" is reasonable. See, e.g., Smith v. Sullivan, 982 F.2d at 344 (noting that it is logical to exclude wages on which an individual has not paid Social Security taxes from computation of benefit limit); Prather v. Sullivan, 844 F.Supp. at 241 ("Congress's decision to exclude non-covered wages from the average current earnings calculation ... is rationally related to the goal of preserving scarce resources where the individual receives benefits from other sources.")
 
 
 [11]
 Claimant's argument that the district court engaged in misconduct by relying on the defendant's memorandum is wholly meritless